KAREN P. HEWITT
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California State Bar No. 94918
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7119
Facsimile:  (619) 557-5004
Email: samuel.bettwy@usdoj.gov

Attorneys for Respondents

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IDRISA SESAY,<br>[A77 062 688]<br><br>    Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of the Department of Homeland Security, MICHAEL MUKASEY, Attorney General, ROBIN F. BAKER, Director of San Diego Field Office, U.S. Immigration and Customs Enforcement, JOHN A. GARZON, Officer-in-Charge,<br><br>    Respondents. | Case No. 07cv2354 JM (LSP)<br><br>RETURN TO PETITION<br>FOR WRIT OF HABEAS CORPUS |

I

INTRODUCTION

This case is controlled by the Ninth Circuit's decision in <u>Pelich v. I.N.S.</u>, 329 F.3d 1057 (9th Cir. 2003). Petitioner Sesay's own inconsistent statements concerning his true citizenship is preventing the Department of Homeland Security ("DHS") from securing his travel documents to effect his removal from the United States. Sesay's detention pending such failure to cooperate is authorized under 8 U.S.C. § 1231(a)(1)(C).

In 1986, Sesay presented a Sierra Leone passport to enter the United States, ostensibly as a temporary visitor, and he continued to assert his Sierra Leone citizenship for the next twenty years until he was about to be placed in removal proceedings. He even obtained a re-newed passport from the Government of Sierra Leone in 1994 and immigration benefits from DHS in 2000 on the basis of his asserted Sierra Leone citizenship. His assertion changed when he was confronted with the prospect of removal from the United States due to his 2004 conviction for sexual battery by restraint. During a prison interview with a DHS officer in 2006, he claimed to be a native and citizen of the U.S. Virgin Islands, and before the Immigration Judge ("IJ") in 2007, he claimed to be a native and citizen of Sudan. As a result, the Consulate of Sierra Leone is reluctant to issue a travel document for Sesay's repatriation. In addition, habeas relief should be denied to Sesay under the unclean hands doctrine because he has necessarily perjured himself, either to DHS, to the Immigration Court or to this Court, regarding whether he is a native and citizen of Sierra Leone.

## II

## STATEMENT OF FACTS

On or about July 27, 1986, Sesay entered the United States as a B-2 visitor for pleasure, through New York City. [Exs. 7, 11, 29.][1/] He alleges that he obtained his entry to the United States by presenting a counterfeit Sierra Leone passport that he had obtained from his South African slave master. [Pet. at 2, 4.] However, eight years later, on August 27, 1994, after having "obtained his freedom from servitude" [Pet. at 3:15-16], and after having graduated from high school in 1989 [Pet. at 3; Ex. 22], Sesay obtained a re-newed passport from the Government of Sierra Leone. [Exs. 1-3, 12-14.]

Meanwhile, in 1989 Sesay was arrested on theft charges, in 1992 he was arrested on battery charges, in 1998 he was arrested for spousal abuse, and in 1999 he was convicted of falsely reporting a crime. [Exs. 4-5, 20.]

---

[1/] "Ex." refers to the accompanying true copy of pertinent documents located in Sesay's DHS administrative "A-File," No. A77 062 688.

On February 4, 2000, Sesay applied to the Immigration and Naturalization Service ("INS") for Temporary Protected Status ("TPS") and employment authorization, claiming, under penalty of perjury [Exs. 10, 12], to be a native and citizen of Sierra Leone. [Exs. 7-8, 11.] INS approved both applications. [Exs. 7, 11.]

On October 26, 2004, he was convicted of sexual battery by restraint and sentenced to four years in prison. [Ex. 15.] In conjunction with those criminal proceedings, he continued to report that he was from Sierra Leone. [Ex. 22.]

On August 16, 2006, shortly before his release from prison, Sesay was interviewed by a DHS officer to whom he stated that he was a citizen of the U.S. Virgin Islands (and that he had entered the United States at some time in 1982). [Ex. 29.] On October 2, 2006, DHS lodged a detainer with the warden of the prison where Sesay was serving his sentence [Ex. 27], and on October 24, 2006, Sesay was transferred to the custody of DHS, which commenced removal proceedings. [Exs. 30-34.]

At hearings before the IJ on December 7, 2006, and January 3, 2007, Sesay requested continuances to find an attorney. At a hearing on February 7, 2007, he pleaded to the allegations and charges in the charging document ("Notice to Appear"), denying that he is native and citizen of Sierra Leone, asserting that he is a native and citizen of Sudan. [Ex. 32.] On March 27, 2007, he filed an application for asylum in Immigration Court, asserting, under penalty of perjury, that he is a native and citizen of Sudan.[2/]

On May 10, 2007, the IJ ordered Sesay removed form the United States, designating Sierra Leone as the appropriate country of removal. [Ex. 32.] Sesay waived appeal from the IJ's decision. [Id.]

On May 11, 2007, DHS requested travel documents from the Consulate of Sierra Leone. [Ex. 36.] In June 2007, a consular officer of Sierra Leone interviewed Sesay who claimed to be a native of Sudan. [Ex. 44.] As a result of Sesay's claim to Sudanese citizenship, the Consulate of Sierra Leone has been unwilling to issue a travel document for his repatriation to Sierra Leone. [Exs. 47, 48, 57.]

---

[2/]    The asylum application has been omitted from the accompanying exhibits because of the confidential nature of such applications in general.

On August 17, 2007, DHS conducted a ninety-day post-order custody review, concluding that Sesay should not be released from custody because he poses a high flight risk and danger to the community. [Exs. 39-47.]

On December 7, 2007, DHS issued and served a "Notice of Failure to Comply," citing Sesay's failure to cooperate with efforts to obtain a travel document for his removal from the United States. [Exs. 49-57.] Specifically, Sesay has "failed to provide the Sierra Leone Consulate the information necessary for the issuance of a travel document." [Ex. 49.] DHS noted that

> the Sierra Leone consulate notified ICE [Immigration and Customs Enforcement] that a travel document would not be issued due to him claiming to be a Sudanese citizen. Since then, SESAY keeps providing ICE and the Sierra Leone Consulate with conflicting information regarding his true nationality. Although SESAY is considered a danger to the community, he is further considered a Failure to Comply, due to deception surrounding his country of removal. Due to SESAY's lack of cooperation, ICE cannot verify his true identity and nationality.

Ex. 57 (emphasis added).

On December 17, 2007, Sesay commenced these habeas proceedings by filing a verified petition in which he alleges that he is not a native and citizen of Sierra Leone. [Pet. at 4:2-3.]

### III

### ARGUMENT

A.   SESAY'S FAILURE TO COOPERATE

The authority of DHS to detain Sesay pending his failure to cooperate is set forth at 8 U.S.C. § 1231(a)(1)(C):

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

Id.

///

///

1   Sesay argues that he should be released because DHS cannot return him to Sierra Leone because he is a native and citizen of Sudan, not of Sierra Leone. [Pet. 2-4.] Apart from the fact that Sesay waived appeal from the IJ's designation of Sierra Leone as the appropriate country of removal and has presented no evidence in support of his claim to Sudanese citizenship, he has a demonstrated pattern of providing false information to government officials, and all evidence indicates that he is a citizen of Sierra Leone.

Sesay asserts that he entered the United States in 1986 on a counterfeit Sierra Leone passport "secured by his slave master" [Pet. 2], yet he was able to obtain a renewed passport from the Government of Sierra Leone in 1994. [Exs. 1-3.] His procurement of the passport in 1994 demonstrates that he is probably not telling the truth about how he obtained his previous passport, that he is likely a citizen of Sierra Leone, and that he is able to obtain a travel document from the Government of Sierra Leone when he wants to.

Furthermore, Petitioner's credibility on the subject of his true citizenship is doubtful, and his lack of cooperation is evident, given that he told the DHS officer who interviewed him in prison that he was a citizen of the U.S. Virgin Islands and that he has lied to the Government of Sierra Leone, DHS, the IJ, and/or this Court about his citizenship.[3/] Regarding the question of whether he is a citizen of Sierra Leone, Sesay lied either in his 2000 applications to INS (signed under penalty of perjury [Exs. 10-11]), in his passport application to the Government of Sierra Leone, in his asylum application in Immigration Court, or in his instant, verified Petition.[4/]

///
///
///

---

[3/]   Also, regarding Sesay's credibility in general, in 1999 he was convicted of making a false report of a crime. [Ex. 5.]

[4/]   Curiously, the "VERIFICATION" of Sesay's instant Petition, drafted by counsel [Pet. at 1 n.1], omits the words "under penalty of perjury." [Pet. at 7:8.] See 28 U.S.C. § 1746.

1   The Government of Sierra Leone has informed DHS that it is reluctant to issue a travel document for Sesay's removal to Sierra Leone given his assertion that he is a native and citizen of Sudan. [Ex. 57] Therefore, due to Sesay's failure to cooperate, DHS may continue to detain him. As the Ninth Circuit stated in the similar, Pelich case:

> There is significant evidence in the record that, unlike the detainees in Zadvydas, Pelich himself is responsible for his plight. Pelich has steadfastly refused to fill out a Polish passport application, which directly impedes Poland's ability to determine whether Pelich qualifies for Polish travel documents. In the January letter, the Polish consulate explicitly reserved its determination of Pelich's citizenship status pending review of the information requested in the letter, including the passport application. Compounding the dilemma is the fact that Pelich has provided the INS with conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality
> . . .
> Since Pelich falls within the category of non-cooperative detainee, he cannot legitimately object to his continued detention when that very detention is caused by his own conduct. Pelich could likely effectuate his own removal (and free himself from detention) by providing the Polish government with the requested information. It naturally follows that his detention is not destined to be indefinite. To the contrary, Pelich's behavior places him within that class of aliens properly detained pursuant to 8 U.S.C. § 1231(a)(1)(C).

Pelich v. I.N.S., 329 F.3d 1057, 1059-60 (9th Cir. 2003). See also Parra v. Perryman, 172 F.3d 954, 958 (9th Cir. 1999) ("A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs"); Ford v. Quarantillo, 142 F. Supp. 2d 585, 588 (D.N.J. 2001) (In deciding whether the INS could continue detention, the Court determined whether the alien's "continued detainment [was] the result of his conspiring or acting to prevent his removal"); Moro v. I.N.S., 58 F. Supp. 2d 854, 859 (N.D. Ill. 1999) (Section 1231(a)(1)(C) "places a burden of good-faith cooperation on aliens in securing their removal"); Castillo-Gradis v. Turnage, 752 F. Supp. 937, 941 (S.D. Cal. 1990) (requiring release "absent a showing of . . . delay caused by the alien's own actions") (citing Dor v. District Director, 891 F.2d 997, 1003 (2d Cir. 1989) (refusing to order Dor released because he was "largely responsible for the very delay of deportation of which he complain[ed]")).

B.     SESAY'S UNCLEAN HANDS SHOULD PRECLUDE HABEAS RELIEF

In addition to the fact that Sesay's continued detention is authorized under 8 U.S.C. § 1231(a)(1)(C), his "unclean hands" should preclude him from receiving habeas relief. The Supreme Court has recognized that the remedy of federal habeas is an equitable one. See Sanders v. United States, 373 U.S. 1, 17 (1963) ("habeas corpus has traditionally been regarded as governed by equitable principles") (quoting Fay v. Noia, 372 U.S. 391, 438 (1963), and United States ex rel. Smith v. Baldi, 344 U.S. 561, 573 (1953) (dissenting opinion)).

> [H]abeas corpus has traditionally been regarded as governed by equitable principles. [United States ex rel. Smith. v. Baldi, 344 U.S. 561, 573 (1953) (dissenting opinion)]. Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.

Fay v. Noia, 372 U.S. at 438. See also McCleskey v. Zant, 499 U.S. 467, 484, 493 (1991); Barefoot v. Estelle, 463 U.S. 880, 887 (1983).

Habeas proceedings are equitable in nature, so equitable defenses apply. The unclean hands doctrine derives from the equitable maxim that "he who comes into equity must come with clean hands." Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814 (1945), quoted in Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985). See also Sanders v. United States, 373 U.S. at 17 (a habeas petitioner's "conduct . . . may disentitle him to the relief he seeks").

Sesay's previous, perjurious statements are directly related to the matter at hand, so he is not entitled to equitable, habeas relief. Today, before this Court, he seeks equitable relief on the basis of his assertion that he <u>is not</u> a native and citizen of Sierra Leone. If that is true, then in 1994 he lied to the Government of Sierra Leone to obtain a re-newed passport, and in 2000 he lied under penalty of perjury to INS to obtain relief from removal and employment authorization, by stating that he <u>is</u> a native and citizen of Sierra Leone. [Exs. 7, 11.] See Pelich at 1062 (rejecting Pelich's assertion of the doctrine, stating that "if the unclean hands doctrine applies, Pelich's misinformation points a finger right back at him").

## IV
## CONCLUSION

For the reasons set forth above, the petition should be denied.

DATED:   March 7, 2008

                                          Respectfully submitted,

                                          KAREN P. HEWITT
                                          United States Attorney

                                          s/ *Samuel W. Bettwy*
                                          SAMUEL W. BETTWY
                                          Assistant U.S. Attorney

                                          Attorneys for Respondents
                                          Email: samuel.bettwy@usdoj.gov