JAMES FIFE
California State Bar No. 237620
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone No. (619) 234-8467
Email: james_fife@fd.org

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JEFFREY T. MILLER)

| | |
|---|---|
| IDRISA SESAY,<br><br>                 Petitioner,<br><br>      v.<br><br>MICHAEL CHERTOFF, et al.,<br><br>            Respondents. | Case No. 07CV2354-JM (LSP)<br><br>**PETITIONER'S REPLY TO RESPONDENTS' SUPPLEMENTAL RETURN** |

     As this Court acknowledged that the burden to show eligibility for relief lies with Petitioner, MRT 3, he respectfully files this Reply to the Respondents' Supplemental Return filed on April 11, 2008.

     Initially, one area of apparent agreement between the parties is that a remand to an IJ is not an appropriate procedure in this case. Petitioner argued that this Court lacks the authority to delegate its fact-finding powers to the IJ. Petitioner's Supplemental Brief ("PSB") at 3-7. Although Respondents cite similar legal reasons why this Court cannot legally remand to the IJ, Respondents' Supplemental Return ("RSR") at 6-7, they nonetheless claim that general powers of equity permit the referral to an IJ. See id. at 7. However, Mr. Sesay cited to this Court recent case law which shows there is no such free-floating, equitable basis to

ignore procedural mandates. See Harvest v. Castro, ___ F.3d ___, 2008 WL 795360 (9th Cir. Mar. 27, 2008 (cited in Petitioner's letter brief of April 11, 2008; a copy is attached hereto as Appendix A). In any event, Respondents argue, like Petitioner, that referral to an IJ is inappropriate, pointing to the practice of the *district court* taking additional evidence if necessary in other detention cases. RSR at 7.

The parties also both argue that there is no need for a referral to decide this case. See PSB at 10-16; RSR at 1-2, 12. Naturally, however, the parties differ as to what clear conclusion the record supports. Mr. Sesay maintains that, despite Respondents' attempts to show otherwise, the weight of the evidence supports the view that Petitioner's claims to Sudanese nationality are made in good faith and are not the basis for ICE's inability to obtain travel documents to Sierra Leone.

Factual Issues

Respondents persist in basing their Pelich claim on actions taken prior to the start of the removal period in this case. Nowhere do Respondents cite any act by Mr. Sesay during the removal period that shows obstruction, such as refusal to fill in forms, refusal to speak to embassy officials, or refusal to provide documents.[1] *Petitioner* is the one who insisted that ICE contact the Sudan embassy to see if travel permission could be obtained. See Appendix A to Traverse; Pitt Declaration, attached to RSR. In fact, Respondents' evidence shows that Petitioner agreed to fill in all applications to Sierra Leone and willingly go there if

---

[1] Respondents refer to Mr. Sesay not providing ICE with the original of the 1994 passport. RSR at 9 n.4. But they point to no evidence to show that producing the passport is even in Mr. Sesay's control. Mr. Sesay has provided what assistance he can to secure documents for Sierra Leone and ICE cannot fault him for not providing what he does not have. See Khan v. Gonzales, 481 F. Supp.2d 638 (W.D. Tex. 2006) (deportee who cooperated during removal was not obstructing, even though he had been *convicted of destroying* his travel documents prior to removal); Moro v. INS, 58 F. Supp.2d 854, 858 (N.D. Ill. 1999) (failing to provide non-existent documents is not obstruction).

accepted, if ICE will at least try to get permission from the Sudan. See RSR Exhibits at 103 (DACS case comment for Feb. 1, 2008). Mr. Sesay is not refusing to provide ICE with whatever it asks to convince Sierra Leone to accept him, with the exception of lying about his nationality and origins.

Respondents go so far as to suggest that even if they are proved wrong, they should still be allowed to detain Mr. Sesay in indefinite civil custody as some sort of punishment for his past conduct: "Therefore, even if it were ultimately determined that [Mr.] Sesay is not a citizen of Sierra Leone, it would only constitute yet another passage in [Mr.] Sesay's long history of deceit regarding his true identity and citizenship." RSR at 2. Nothing in any of the governing cases, from Zadvydas to Pelich, allows prolonged civil detention as retribution for having an alleged "long history of deceit" that has no effect whatever on why removal efforts failed. Respondents' muddled thinking leads them to suggest that Mr. Sesay can be held indefinitely, contrary to the Supreme Court's requirement that immigration detention must be non-punitive and only to facilitate a reasonably foreseeable removal. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("where detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed.' ").

Respondents fare no better in trying to shore up their claim that Sierra Leone has refused Mr. Sesay, because he made an oral assertion of being Sudanese. As Mr. Sesay noted, PSB at 13-14, Respondents base this claim—on which their entire argument hinges—on a single, unsworn statement by custody review officer Thomas at the end of the December 2007 custody review. See Return Exhibits at 57. However, the section of the same custody review detailing contacts with the Sierra Leone consulate does not document this significant development; see Return Exhibits at 54. Neither does the previous August 2007 custody review.

1 | See Return Exhibits at 41-50.

2

3   Respondents now offer a declaration of the acting deportation officer assigned to Mr. Sesay's file. See

4   Pitt Declaration. However, his declaration says nothing to support Officer Thomas's assertion that "the Sierra

5   Leone consulate notified ICE that a travel document could not be issued due to him claiming to be a Sudanese

6   citizen." Return Exhibits at 57. In fact, Officer Pitt *contradicts* Officer Thomas, by declaring, "The Sierra

7

8   Leone consulate has not formally denied our travel document request." Pitt Declaration at ¶ 3. Officer Pitt's

9   view is supported by the DACS printouts attached to the RSR: nowhere in the records between March 28,

10

11  2007 and March 31, 2008 does any comment confirm Officer Thomas's assertion. See RSR Exhibits at 97-

12  105. Respondents concede as much. See RSR at 6, 9 ("The Sierra Leone consulate has not formally denied

13

14  DHS's request for a travel document.").

15   Officer Thomas's assertion is also belied by the individual entries in the DACS printouts. The printouts

16  show an initial request from Sierra Leone in May 2007, a telephone interview and follow-up call in June

17

18  2007, then additional messages left with the consulate in July, August, and October 2007 and two in March

19  2008. See id. When ICE was actually successful in contacting the consulate, the recorded response was

20

21  never "We refuse, because he claims to be from Sudan," but that the consulate is still processing and

22  investigating the case. See RSR Exhibits at 99, comment for August 31, 2007; id. at 100, comment for

23  September 6, 2007; id. at 105, comment for March 17, 2008. If Mr. Sesay's Sudanese claim had truly stymied

24  the effort to convince Sierra Leone to accept him, they would not have made repeated promises over the last

25

26  ten months to be reviewing the case further. Most telling of all is the DACS comment–confirming the

27  statement in the custody reviews noted in Traverse at 14, PSB at 13-14–that the Sierra Leone consul did not

28

even believe Mr. Sesay's claim to be from the Sudan.  See RSR Exhibits at 97, comment for June 25, 2007 ("consul Mesali not convinced that subj is fr Sudan as claimed").

Thus, the one critical, unsworn statement upon which Respondents hang their claim that Mr. Sesay's acts during the removal period have impeded the removal process is contradicted by multiple other documentary records and the sworn declaration of Officer Pitt.  While Officer Pitt simply states he has no knowledge confirming Mr. Sesay's declaration, he positively asserts facts *refuting* Respondents' argument.  The DACS comments support Officer Pitt's declaration, not Officer Thomas's conclusory statement.  Instead of showing refusal, or even an impediment, caused by Mr. Sesay's claim of Sudanese nationality, Respondents' additional evidence shows rather the fairly typical Zadvydas situation of a country dragging its feet and never making a decision within the Supreme Court's reasonable removal period.

Respondents make numerous other assertions which find no support in the record.  Mr. Sesay did not cite literature on the traffic in false Sierra Leone documents to show the precise provenance of his false 1994 passport, RSR at 1, but to show that his claim to have twice used a counterfeit Sierra Leone passport accords with an independently documented prevalence of such a blackmarket.  Respondents refer to unspecified evidence of "extensive family ties in the DC area," RSR at 3 n.2, but Mr. Sesay denies he has *any* known blood relatives in this country, including the claim on "information and belief" that Mr. Sesay entered into this country with an "uncle," RSR at 3, 11, a claim which Respondents' own TECS printout fails to support.  See RSR Exhibits at 63.  Respondents actually distort the record in claiming Mr. Sesay "fled to Tennessee to avoid arrest." RSR at 4.  The probation officer's report, on which Respondents rely, says no such thing, and indicates rather that Mr. Sesay "while being investigated chose to leave the state and go to Tennessee."

Return Exhibits at 25.  There is no indication of that a fugitive warrant was issued, and the probation report seems to reflect that Mr. Sesay's whereabouts were known and that the officer had even spoken to Mr. Sesay about his future plans to return to California.  See id. at 22.  Mr. Sesay did indeed freely return to the state and was subsequently prosecuted.[2]

Respondents cling to claims that have been answered by or are manifestly contrary to the record and common sense.  They continue to misunderstand the basic facts of this case by referring to the 1994 false passport as a "renewal" issued by the Sierra Leone government, even though it is a counterfeit bought in California.  Respondents utterly ignore the Case Declaration and its proof that Respondents' theory of a sudden change in story just to avoid removal is baseless.  Respondents ignore that the obvious explanation for why Mr. Sesay never claimed TPS from the Sudan is because his status in the United States was based on his being admitted on the false *Sierra Leone* documents, and so there would be no need or any sense in claiming protective status from Sudan, any more than from Burundi.  See RSR at 10 (listing Sierra Leone, Sudan, and Burundi as qualifying TPS countries).  Nor is it significant that Mr. Sessay has not filed a TPS application since the removal, because, instead, he filed for much more substantive relief with an *asylum* claim.  Respondents seem to have the unrealistic view that civil wars operate within precise time frames, claiming Mr. Sesay's story of Janjaweed deprivations does not fit the supposed historical chronology.  See

---

[2] Consistent with its prior attempts in the Return, Respondents try to substitute evidence of actual acts of obstruction with general attempts to portray Mr. Sesay in a bad light.   But the merits of a Zadvydas claim have nothing whatever to do with the detainee's history of misconduct.  Mr. Zadvydas, who had "a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft," as well as possessing, with intent to distribute, cocaine, drawing a sentence of 16 years' imprisonment and having "a history of flight, from both criminal and deportation proceedings," was ordered released by the Supreme Court.  See Zadvydas, 533 U.S. at 684.  Respondents' excursion into Mr. Sesay's *pre-removal* conduct is an immaterial effort to create a smokescreen of prejudice.

1   RSR at 11.  However, the very same report cited by Respondents observes that the conflict and animosities

2   in Darfur stretch back at least to the first civil war in the 1960s and '70s, intensified by the discovery of oil

3

4   in the southern Sudan.  See Report of the International Commission of Inquiry on Darfur 18 (Jan. 25, 2005),

5   available at http://www.un.org/news/dh/sudan/com_inq_darfur.pdf.  Moreover, quite apart from the "official"

6   conflict between the rebels and the government with its Janjaweed allies, "the most significant element of

7

8   the conflict has been attacks on civilians, which has led to the destruction and burning of entire villages, and

9   the displacement of large parts of the civilian population."  Id. at 25.  Clearly, the existence of an official

10  "truce" between the warring factions does not mean that atrocities did not continue, finally escalating to

11

12  renewed fighting and the recent genocide.[3]

13  Legal Issues

14

15  Respondents' many factual detours are matched by missteps in their legal analysis.  Mr. Sesay urges this

16  Court to bear in mind the central concept, derived from Zadvydas, that once six months have elapsed since

17  an order of removal, there is *no presumption of reasonableness* in support of further detention.  If removal

18

19  is not significantly likely in the reasonably foreseeable future, the deportee *must be released.*  See Zadvydas,

20  533 U.S. at 699-700 ("Thus, if removal is not reasonably foreseeable, the court should hold continued

21

22  detention unreasonable and no longer authorized by statute.").  Under Zadvydas, outright refusal is not

23  required, but release is mandated if the process of obtaining travel documents is unreasonably prolonged.

24

25

26       [3] Respondents' one-sided view of the facts is also seen in its claim that Mr. Sesay's
     knowledge of English is inexplicable, except on a surmise that he is a member of the "educated
27   elite" from Sierra Leone.  RSR at 11.  This ignores the fact that English was not only the colonial
     language of government in the Sudan, but also an official language in South Africa and the
28   prevailing language in the United States, countries where Mr. Sesay has lived for all but 18
     months of his 29 years since fleeing Darfur.

See id. at 684, 702 (release ordered although Lithuania was still considering Mr. Zadvydas's application).

As indicated in the Traverse, Respondents' only hope to avoid the normal operation of Zadvydas in this case is the claim that the removal period has been extended under 8 U.S.C. § 1231(a)(1)(C), and so detention is permitted under Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003).[4] However, suspension cannot be based on acts occurring *before the removal period*, a legal principle which Respondents never show is inapplicable here. Indeed, all the cases cited by Respondents involve acts of obstruction during the removal period; they cite not one case upholding suspension based solely on pre-removal acts. The case law cited by Mr. Sesay holds the opposite: acts prior to removal which happen to make removal more difficult are not obstruction triggering suspension, such as when the deportee maintains a consistent, supported claim to a contrary nationality during removal. See Khan, 481 F. Supp.2d at 641-43; Abdel-Muhti v. Ashcroft, 314 F. Supp.2d 418, 428-29 (M.D. Pa. 2004). Respondents never address these cases. In fact, even when the deportee makes a truthful assertion to the consulate that he *knows* will result in refusal, that cannot be deemed an obstruction. See Rajigah v. Conway, 268 F. Supp.2d 159, 165-66 (E.D.N.Y. 2003); Seretse-Khama v. Ashcroft, 215 F. Supp.2d 37, 51-53 (D.D.C. 2002). Whatever reasoning may apply to cases of deportees who physically resist their deportation, that is not the case here. RSR at 13. Respondents fail to cite any act of non-cooperation

---

[4] Respondents appear to retreat from their § 1231(a)(1)(C) argument and now claim that indefinite detention is justified, because ICE determined Mr. Sesay was a danger to the community in denying release during its custody reviews. See RSR at 12-13. This position has even less merit than the suspension argument. Inasmuch as detention past the 90 days of the removal period is permitted *only* if there is a finding of significant flight risk or danger to the community, see 8 C.F.R. § 241.4(a)(4), every deportee so held qualifies under this reasoning. The point, however, is not what basis ICE gives to detain past the 90 days, but whether detention is allowed *past the six-month mark* set in Zadvydas. The only grounds for continued detention under Zadvydas are: (1) imminent removal; or (2) suspension by non-cooperation. Neither ground is justified here.

1  by Mr. Sesay during the removal stage, apart from his truthful claim of Sudanese nationality.

2       Respondents' attempts to distinguish and undermine the on-point decision in Singh v. Gonzales, 448 F.

3    Supp.2d 1214 (W.D. Wash. 2006), also fail. For reasons given supra n.4, it is irrelevant that ICE previously

4  cited danger to the community to continue *custody*, because the question is whether the *deportation period*

5  is justifiably extended. See RSR at 13. Nor is Singh "fundamentally flawed." RSR at 14. While 8 C.F.R.

6  § 241.4(g)(5)(iv) does state that failure to notify does not excuse an obstruction, the regulation does not

7  purport to re-write the requirements of basic due process and fundamental fairness to provide notice and

8  opportunity. See Singh, 448 F. Supp.2d at 1218 (petitioner argued suspension without timely notice violated

9  due process). Nor does it matter that ICE was four months too late in serving notice here, whereas it was 17

10  months (or 19 days, by Respondents' calculation) in Singh. RSR at 14 n.14. Nowhere does Singh indicate

11  that its holding was based on the length of time elapsed after the default. When a mandatory terminus for

12  some act is set by regulation, it is immaterial whether the deadline is missed by 19 or 120 days. The operative

13  fact is that notice did not occur within the removal period, so suspension is not applicable under Singh.

14       None of Respondents' legal arguments alters the fact that unless an act occurs constituing "refusing to

15  assist officials to effect . . . removal," Lema v. INS, 341 F.3d 853, 857 n.7 (9th Cir. 2003), no suspension

16  under § 1231(a)(1)(C) or detention under Pelich and Lema is authorized. The case law indicates actions taken

17  prior to the removal period do not qualify. Without the operation of a suspension, Respondents have no basis

18  to refuse to comply with the Supreme Court's mandate in Zadvydas to release Petitioner.

Referral

Mr. Sesay maintains that a decision granting the Petition requires no further evidence. This is because

Respondents fail to provide any contrary facts which show that his claim of Sudanese origin is made in bad faith simply to thwart removal. The facts show that Mr. Sesay has maintained a consistent, good faith claim of his origin and has done so openly for over seven years. Nothing shows an act of obstruction during the removal period, and he has, in fact, cooperated as fully as the petitioner in <u>Khan</u> and has even offered to go to Sierra Leone if it will accept him. But he has not agreed to lie. Consequently, he has done all expected of him, and Respondents cannot rely on suspension to avoid the force of <u>Zadvydas</u>.

However, if this Court is willing to credit some part of Respondents' new assertions, Mr. Sesay urges that the matter be aired fully before this Court or the assigned magistrate. Respondents' case is based on: (1) assertions of "belief" which are unsupported by their own documentary evidence (RSR at 3 n.2); (2) unspecified "public information" (RSR at 3 nn. 3 & 5); (3) speculation (<u>e.g.</u>, about possible claims of citizenship on college entrance forms–RSR at 3 n.6); (4) misrepresentation of the record (<u>e.g.</u>, that Mr. Sesay fled to Tennessee–RSR at 4); and (5) numerous references to Mr. Sesay's lack of credibility without this Court having the opportunity to determine it directly. In such circumstances, additional inquiry is warranted under 28 U.S.C. § 2243.

Respectfully submitted,

Dated: April 14, 2008          _s/ James Fife_____
                               **JAMES FIFE**
                               **Federal Defenders of San Diego, Inc.**
                               Attorneys for Petitioner SESAY
                               james_fife@fd.org

# APPENDIX A

Westlaw.

--- F.3d ----
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
**(Cite as: --- F.3d ----, 2008 WL 795360)**

**H**
Harvest v. Castro
C.A.9 (Cal.),2008.

United States Court of Appeals,Ninth Circuit.
Joshua HARVEST, Petitioner-Appellant,
v.
Roy CASTRO, Warden, HDSP, Respondent-Appellee.
No. 05-16879.

Argued and Submitted Sept. 27, 2007.
Filed March 27, 2008.

**Background:** State prisoner convicted of first-degree murder filed petition for writ of habeas corpus. The United States District Court for the Northern District of California, James Ware, J., issued conditional writ ordering state to release prisoner within 60 days unless it either modified the conviction to one for second-degree murder or retried prisoner, and, upon state's failure to comply with the writ, granted in part state's application to amend the conditional writ to give state more time to retry prisoner, modify his conviction, or release him. Prisoner appealed.

**Holdings:** The Court of Appeals, Tashima, Circuit Judge, held that:
(1) excusable neglect standard under rule governing motions for relief from judgment did not provide sufficient grounds for reopening the conditional writ;
(2) rule providing that a court may, in its discretion, take cognizance of changed circumstances and relieve a party from a continuing decree did not provide proper vehicle for modifying the conditional writ; and
(3) catch-all provision of rule governing motions for relief from judgment did not provide an avenue for modification of the conditional writ.

Reversed and remanded with instructions.

Subsequent appeal at 2008 WL 795360.

**[1] Habeas Corpus 197 ☞842**

197 Habeas Corpus
 197III Jurisdiction, Proceedings, and Relief
  197III(D) Review
   197III(D)2 Scope and Standards of Review
    197k842 k. Review De Novo. Most Cited Cases

**Habeas Corpus 197 ☞843**

197 Habeas Corpus
 197III Jurisdiction, Proceedings, and Relief
  197III(D) Review
   197III(D)2 Scope and Standards of Review
    197k843 k. Discretion of Lower Court. Most Cited Cases
The Court of Appeals reviews de novo the question of which legal standard applies on a motion to modify a conditional writ of habeas corpus, but reviews for abuse of discretion a district court's granting of a motion for relief from judgment. Fed.Rules Civ.Proc.Rule 60(b), 28 U.S.C.A.

**[2] Habeas Corpus 197 ☞441**

197 Habeas Corpus
 197II Grounds for Relief; Illegality of Restraint
  197II(A) Ground and Nature of Restraint
   197k441 k. Improper Restraint or Detention in General. Most Cited Cases
When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional or other federal rights. 28 U.S.C.A. § 2254(a).

**[3] Habeas Corpus 197 ☞795(1)**

197 Habeas Corpus
 197III Jurisdiction, Proceedings, and Relief
  197III(C) Proceedings

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                   Page 2
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
**(Cite as: --- F.3d ----, 2008 WL 795360)**

197III(C)5 Determination and Disposition; Relief
    197k794 Proceedings by State Prisoners in Federal Courts
    197k795 Conditional Relief; New Trial or Other Proceeding
    197k795(1) k. In General. Most Cited Cases
Conditional orders in habeas cases are essentially accommodations accorded to the state, in that conditional writs enable habeas courts to give states time to replace an invalid judgment with a valid one.

**[4] Habeas Corpus 197 ☜➾795(1)**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
    197III(C) Proceedings
    197III(C)5 Determination and Disposition; Relief
    197k794 Proceedings by State Prisoners in Federal Courts
    197k795 Conditional Relief; New Trial or Other Proceeding
    197k795(1) k. In General. Most Cited Cases
The consequence when the state fails to replace an invalid judgment with a valid one, pursuant to an order conditionally granting habeas relief, is always release.

**[5] Habeas Corpus 197 ☜➾795(1)**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
    197III(C) Proceedings
    197III(C)5 Determination and Disposition; Relief
    197k794 Proceedings by State Prisoners in Federal Courts
    197k795 Conditional Relief; New Trial or Other Proceeding
    197k795(1) k. In General. Most Cited Cases

**Habeas Corpus 197 ☜➾802**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
    197III(C) Proceedings
    197III(C)5 Determination and Disposition; Relief
    197k802 k. Relief from Judgment; Revocation or Modification. Most Cited Cases
A district court can modify its conditional writ of habeas corpus even after the time provided in the conditional writ has lapsed.

**[6] Habeas Corpus 197 ☜➾795(1)**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
    197III(C) Proceedings
    197III(C)5 Determination and Disposition; Relief
    197k794 Proceedings by State Prisoners in Federal Courts
    197k795 Conditional Relief; New Trial or Other Proceeding
    197k795(1) k. In General. Most Cited Cases
Given that a writ of habeas corpus is, at its core, an equitable remedy, and that courts have broad discretion in conditioning a judgment granting habeas relief, logically, the equitable power of the district court in deciding a habeas petition includes the ability to grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency.

**[7] Habeas Corpus 197 ☜➾661**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
    197III(C) Proceedings
    197III(C)1 In General
    197k661 k. In General. Most Cited Cases
The fact that the writ of habeas corpus has been called an equitable remedy does not authorize a court to ignore statutes, rules, and precedents;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

rather, courts of equity must be governed by rules and precedents no less than the courts of law.

**[8] Habeas Corpus 197 ⚏══➤795(1)**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
        197III(C)5 Determination and Disposition; Relief
          197k794 Proceedings by State Prisoners in Federal Courts
            197k795 Conditional Relief; New Trial or Other Proceeding
              197k795(1) k. In General. Most Cited Cases

**Habeas Corpus 197 ⚏══➤802**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
        197III(C)5 Determination and Disposition; Relief
          197k802 k. Relief from Judgment; Revocation or Modification. Most Cited Cases
A district court has the authority to modify a conditional writ of habeas corpus in order to give the state more time to cure the constitutional deficiency, but such modifications are governed by the rules governing habeas petitions and, by incorporation, the rules of civil procedure, including the rule governing motions for relief from judgment. Rules Governing Section 2254; Fed.Rules Civ.Proc.Rule 81(a)(4), 28 U.S.C.A.; Fed.Rules Civ.Proc.Rule 60(b), 28 U.S.C.App.(2000 Ed.)

**[9] Habeas Corpus 197 ⚏══➤802**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
        197III(C)5 Determination and Disposition; Relief
          197k802 k. Relief from Judgment; Revocation or Modification. Most Cited Cases

Excusable neglect standard under rule governing motions for relief from judgment did not provide sufficient grounds for District Court to reopen conditional writ of habeas corpus to give state more time to retry prisoner, modify his conviction, or release him, where state's failure to timely carry out terms of conditional writ did not result in issuance of the order, but, rather, was a "mistake" that came after issuance of the order. Fed.Rules Civ.Proc.Rule 60(b)(1), 28 U.S.C.App.(2000 Ed.)

**[10] Habeas Corpus 197 ⚏══➤802**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
        197III(C)5 Determination and Disposition; Relief
          197k802 k. Relief from Judgment; Revocation or Modification. Most Cited Cases
Rule providing that a court may, in its discretion, take cognizance of changed circumstances and relieve a party from a continuing decree did not provide proper vehicle for modifying conditional writ of habeas corpus to give state more time to retry prisoner, modify his conviction, or release him, where conditional writ itself clearly contemplated continued supervision, given that it ordered state to file and serve a notice of compliance no later than 60 days from date of the order, and state showed no significant change either in factual conditions or in law. Fed.Rules Civ.Proc.Rule 60(b)(5), 28 U.S.C.App.(2000 Ed.)

**[11] Federal Civil Procedure 170A ⚏══➤2651.1**

170A Federal Civil Procedure
    170AXVII Judgment
      170AXVII(G) Relief from Judgment
        170Ak2651 Grounds
          170Ak2651.1 k. In General. Most Cited Cases
The standard used in determining whether a judgment has prospective application, as would warrant relief from judgment on basis of changed circumstances, is whether it is executory or involves the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                Page 4
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
(Cite as: --- F.3d ----, 2008 WL 795360)

supervision of changing conduct or conditions. Fed.Rules Civ.Proc.Rule 60(b)(5), 28 U.S.C.App.(2000 Ed.)

**[12] Habeas Corpus 197 ☞802**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
       197III(C) Proceedings
          197III(C)5 Determination and Disposition; Relief
             197k802 k. Relief from Judgment; Revocation or Modification. Most Cited Cases
Under rule providing that a court may, in its discretion, take cognizance of changed circumstances and relieve a party from a continuing decree, modification of a conditional writ of habeas corpus is warranted if there is a significant change either in factual conditions or in law. Fed.Rules Civ.Proc.Rule 60(b)(5), 28 U.S.C.App.(2000 Ed.)

**[13] Federal Civil Procedure 170A ☞2657.1**

170A Federal Civil Procedure
    170AXVII Judgment
       170AXVII(G) Relief from Judgment
          170Ak2657 Procedure
             170Ak2657.1 k. In General. Most Cited Cases
Under rule providing that a court may, in its discretion, take cognizance of changed circumstances and relieve a party from a continuing decree, the party seeking the modification has the burden of demonstrating that such a change has occurred. Fed.Rules Civ.Proc.Rule 60(b)(5), 28 U.S.C.App.(2000 Ed.)

**[14] Habeas Corpus 197 ☞802**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
       197III(C) Proceedings
          197III(C)5 Determination and Disposition; Relief
             197k802 k. Relief from Judgment; Revocation or Modification. Most Cited Cases
Under rule providing that a court may, in its discre-

tion, take cognizance of changed circumstances and relieve a party from a continuing decree, when the state proves that there has been an intervening change in the law, or demonstrates that the petitioner's actions have inhibited the efforts of the state to retry or resentence the petitioner, modification of a conditional writ of habeas corpus may be appropriate. Fed.Rules Civ.Proc.Rule 60(b)(5), 28 U.S.C.App.(2000 Ed.)

**[15] Habeas Corpus 197 ☞802**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
       197III(C) Proceedings
          197III(C)5 Determination and Disposition; Relief
             197k802 k. Relief from Judgment; Revocation or Modification. Most Cited Cases
Catch-all provision of rule governing motions for relief from judgment did not provide an avenue for modification of conditional writ of habeas corpus to give state more time to retry prisoner, modify his conviction, or release him, where, even assuming that state could show that it had suffered an injury, it had not demonstrated that there were any circumstances beyond its control; state's counsel acknowledged that the circumstances were under his control and that his error in timely complying with the conditional writ was "professionally inexcusable." Fed.Rules Civ.Proc.Rule 60(b)(6), 28 U.S.C.App.(2000 Ed.)

**[16] Federal Civil Procedure 170A ☞2651.1**

170A Federal Civil Procedure
    170AXVII Judgment
       170AXVII(G) Relief from Judgment
          170Ak2651 Grounds
             170Ak2651.1 k. In General. Most Cited Cases
A party moving for relief under catch-all provision of rule governing motions for relief from judgment must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the action in a proper fashion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                    Page 5
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
(Cite as: --- F.3d ----, 2008 WL 795360)

Fed.Rules    Civ.Proc.Rule    60(b)(6),    28
U.S.C.App.(2000 Ed.)

**[17] Federal Civil Procedure 170A ⟜ 2651.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2651 Grounds
                170Ak2651.1 k.  In  General.  Most
Cited Cases
Catch-all provision of rule governing motions for
relief from judgment is to be used sparingly as an
equitable remedy to prevent manifest injustice and
is to be utilized only where extraordinary circum-
stances prevented a party from taking timely action
to prevent or correct an erroneous judgment.
Fed.Rules    Civ.Proc.Rule    60(b)(6),    28
U.S.C.App.(2000 Ed.)

Scott A. Sugarman, Sugarman & Cannon, San
Francisco, CA, for the petitioner-appellant.
Jeremy E. Friedlander, Deputy Attorney General,
State of California, San Francisco, CA, for the re-
spondent-appellee.

Appeal from the United States District Court for the
Northern District of California; James Ware, Dis-
trict Judge, Presiding. D.C. No. CV 00-20498 JW.

Before: JOHN R. GIBSON,[FN*]A. WALLACE
TASHIMA, and MARSHA S. BERZON, Circuit
Judges.

**OPINION**

TASHIMA, Circuit Judge.
*1 We must decide whether and, if so, under what
circumstances, a district court has the authority to
modify a conditional writ of habeas corpus after the
time provided in the order has lapsed. We hold that
the district court does have such authority, but that
such modifications may only be made pursuant to
the Rules of Civil Procedure. In this case, the State
has failed to demonstrate that relief under Rule 60
is warranted; therefore, we reverse the district

court, concluding that it abused its discretion when
it modified the conditional writ. We remand with
instructions for the district court to grant the uncon-
ditional writ of habeas corpus ordering the petition-
er's release.

**JURISDICTION**

The district court had jurisdiction pursuant to 28
U.S.C. § 2254, and we have jurisdiction pursuant to
28 U.S.C. §§ 1291 and 2253.

**BACKGROUND**

Joshua Harvest was convicted of first-degree
murder in California Superior Court. After exhaust-
ing his state remedies, Harvest challenged his con-
viction in a federal habeas action on the ground,
among others, that the trial court had violated his
right of confrontation under the Sixth and Four-
teenth Amendments by improperly admitting Har-
vest's accomplice's hearsay testimony. We granted
relief on that ground and remanded the case, direct-
ing "the district court to order the state to release
the petitioner unless the state either modifies the
conviction to one for second degree murder or re-
tries the petitioner."*Harvest v. Castro,* 121 F. App'x
216, 220 (9th Cir.2005). Consistent with our man-
date, the district court issued a conditional writ or-
dering the State to release Harvest "within sixty
(60) days of the date of this Order unless within
that period of time the state initiates proceedings to
either modify the conviction to one for second de-
gree murder or to retry Petitioner."

The State did not initiate proceeding to modify the
conviction, nor did it release Harvest within sixty
days from the date of the district court's order. The
State's lawyer admits that he failed to act within the
designated time. He explained:

    The Court's order was received by the California
    Attorney General ... on March 25, 2005, [two
    days after the district court issued the conditional
    writ]. Through counsel's error, the order was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                 Page 6
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
(Cite as: --- F.3d ----, 2008 WL 795360)

simply filed and not transmitted to the District Attorney of Contra Costa County, where petitioner was tried. The error was discovered on July 22, when the District Attorney's office inquired of the Attorney General's office about the status of the case.

The error in this matter occurred for a very simple reason. After advising the District Attorney of the Ninth Circuit's modification of its opinion (in which modification the Ninth Circuit authorized the state to retry petitioner for murder or modify his conviction to second degree murder), counsel for respondent foolishly assumed that it was unnecessary for him to advise the District Attorney of the District Court's order giving effect to the Ninth Circuit's judgment. Counsel's error was professionally inexcusable....

*2 After discovering his error, the State's counsel nevertheless waited three more days before bringing the error to the district court's attention, providing the Contra Costa County District Attorney time to file a new complaint in Superior Court recharging Harvest with the murder.[FN1]

The State eventually filed an "Application to Amend Order Nunc Pro Tunc," seeking to amend the conditional writ. The application sought an additional sixty days to retry Harvest, modify his conviction, or release him. Harvest opposed the application, arguing that the district court should order his immediate release. Finding the State's counsel's error "excusable," the district court granted in part the State's application to amend the conditional writ-it gave the State an additional month to "release petitioner or initiate proceedings to either modify the conviction to one for second degree murder or to retry petitioner."Harvest timely appealed.

**STANDARD OF REVIEW**

[1] We review *de novo* the question of which legal standard applies to the State's motion to modify the conditional writ, *see Bellevue Manor Assocs. v. United States,* 165 F.3d 1249, 1252 (9th Cir.1999), but review for abuse of discretion the district court's granting of relief under Rule 60(b), *see id.*

**ANALYSIS**

**I. Modifying the Conditional Writ**

[2] When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights. *See*28 U.S.C. § 2254(a); *Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody[.]"). Given that function of the writ, courts originally confined habeas relief to orders requiring the petitioner's unconditional release from custody. *See, e.g., In re Frederich,* 149 U.S. 70, 77, 13 S.Ct. 793, 37 L.Ed. 653 (1893) ("[I]f such conviction was obtained in disregard or in violation of rights secured to him by the constitution and laws of the United States, ... he may apply for a writ of habeas corpus to be discharged from custody under such conviction."); *Medley, Petitioner,* 134 U.S. 160, 173, 10 S.Ct. 384, 33 L.Ed. 835 (1890) ("[U]nder the writ of *habeas corpus* we cannot do anything else than discharge the prisoner from the wrongful confinement in the penitentiary[.]"); William Blackstone, 3 *Commentaries* *131 ("[T]he great and efficacious writ in all manner of illegal confinement, is that of *habeas corpus...* directed to the person detaining another, and commanding him to produce the body of the prisoner ... and, if the cause of imprisonment were palpably illegal, they might have discharged him.").

In modern practice, however, courts employ a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action, such as to retry (or resentence) the petitioner. *See, e.g., Wilkinson v. Dotson,* 544 U.S. 74, 89, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (Kennedy, J.,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
(Cite as: --- F.3d ----, 2008 WL 795360)

dissenting) (describing the "common practice of granting a conditional writ," that is, "ordering that a State release the prisoner or else correct the constitutional error through a new hearing"); *Herrera v. Collins,* 506 U.S. 390, 403, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner, or in a capital case a similar conditional order vacating the death sentence."); *Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1986) ("[T]his Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."); *In re Bonner,* 151 U.S. 242, 259-60, 14 S.Ct. 323, 38 L.Ed. 149 (1894) (recognizing for the first time that the habeas court had the power to retain the petitioner in conditional custody before granting relief).

**\*3** **[3][4]** Such "[c]onditional orders are essentially accommodations accorded to the state,"*Phifer v. Warden,* 53 F.3d 859, 864-65 (7th Cir.1995), in that conditional writs "enable habeas courts to give States time to replace an invalid judgment with a valid one[,]"*Wilkinson,* 544 U.S. at 87 (Scalia, J., concurring). The consequence when the State fails to 3128 replace an invalid judgment with a valid one is "always release." *Id.; accord Satterlee v. Wolfenbarger,* 453 F.3d 362, 369 (6th Cir.2006) (affirming district court's granting of immediate release upon the State's failure to comply with the conditional writ); *Phifer,* 53 F.3d at 862 ("If the state complies with [the district court's] order, the petitioner will not be released; if the state fails to comply with its order, release will occur."); *Fisher v. Rose,* 757 F.2d 789, 791 (6th Cir.1985) ("A conditional grant of a writ of habeas corpus requires the petitioner's release from custody if new proceedings are not commenced by the state within the prescribed time period."); 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 33.3, at 1684 (5th ed. 2005) ("If the state fails to act within the time set for retrial (or

for some other proceeding) to occur, the petitioner must be released from custody immediately.").

Despite the absolute language employed by some jurists and commentators, several of our sister circuits have nevertheless held that a district court can modify its conditional order even after the expiration of the time period set in the order, thus allowing the State to retain the petitioner in its custody even when the State failed to act within the prescribed time period. Those circuits hold that when the State fails to replace an invalid judgment with a valid one, the consequence for failing to do so need not always be release.

The most expansive view of this power has been expressed by the Third and Seventh Circuits. In *Gilmore v. Bertrand,* 301 F.3d 581 (7th Cir.2002) (per curiam), the Seventh Circuit held that the district court has the power to grant the State's motion for an extension to comply with the conditional order even if the State fails to act in a timely manner. *Id.* at 583.In that case, after failing to act within the 120 days given in the conditional order, the State moved for a 45-day extension of the stay, and the district court granted it. *Id.* at 582.The Seventh Circuit reasoned that:

> [H]abeas corpus is an equitable remedy, and courts have broad discretion in conditioning a judgment granting habeas relief. Indeed, federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court. Logically, the equitable power of the district court in deciding a habeas corpus petition includes the ability to grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency.

**\*4** *Id.* at 582-83 (internal citations and quotation marks omitted). Thus, *Gilmore* seems to suggest that a district court's power to modify the condition is boundless, or at least constrained only by the limits placed on the discretion of the court to craft the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 8
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
(Cite as: --- F.3d ----, 2008 WL 795360)

initial conditional order.

The Third Circuit expressly agreed with *Gilmore* that the district court has the power to modify a conditional writ, but it did so without defining the power in such expansive terms. *See Gibbs v. Franks,* 500 F.3d 202, 208-09 (3d Cir.2007), *cert. denied*No. 07-7905, 2008 WL 423765 (U.S. Feb.19, 2008). In *Gibbs,* the district court allowed the Commonwealth to retain custody of the petitioner even though it failed to retry him within the 120 days provided for in the conditional writ, based in part on the district court's finding that the delay was caused by both the Commonwealth and the petitioner. *Id.* In light of these circumstances, the Third Circuit failed "to see why a post-deadline justification offered by the state for the delay in a prisoner's retrial should be categorically rejected as a legal matter" and concluded that "[t]he broad discretion inherent in a district court's habeas powers include[*sic* ] the ability to evaluate whether the Commonwealth has provided a legitimate reason for its delay in retrying a defendant subject to a conditional habeas writ."*Id.* at 208.The *Gibbs* court held that the district court's power to modify the conditional order includes the power to modify the writ when the district court's "actions are reasonable under the circumstances,"*id.* at 207, and that one circumstance in which modification is reasonable is when the Commonwealth (or State), "provide[s] a legitimate reason for its delay [,]"*id.* at 208.To the *Gibbs* court, "it is of no moment whether the Commonwealth seeks an extension directly from the District Court during the initial deadline or ... provides a post hoc justification for the trial delay."*Id.* Whether the district court has the power to modify the writ when the State provides no reason, or an illegitimate one, remains an open question under *Gibbs.*

The Eighth Circuit also has concluded that the district court's power to modify a lapsed conditional writ includes the power to modify the writ when the State provides a good reason. In *Chambers v. Armontrout,* 16 F.3d 257 (8th Cir.1994), the Eighth

Circuit did "not think the district court erred in granting the state additional time to retry" the petitioner, in part because "there was ... some evidence that the delay in retrial had been attributable at least in part to the defense."*Id.* at 261 n. 2.[FN2]

[5][6][7] We agree with our sister circuits that a district court can modify its conditional writ even after the time provided in the conditional writ has lapsed. Given that "habeas corpus is, at its core, an equitable remedy,"*Schlup v. Delo,* 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and that courts have "broad discretion in conditioning a judgment granting habeas relief,"*Hilton,* 481 U.S. at 775, we agree with the Seventh Circuit that "[l]ogically, the equitable power of the district court in deciding a habeas petition includes the ability to grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency ."[FN3]*Gilmore,* 301 F.3d at 582-83;*cf. Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1030 (9th Cir.1985) ("The district court has continuing jurisdiction over such matters as the modification of injunctive relief."). However, "the fact that the writ has been called an 'equitable' remedy does not authorize a court to ignore ... statutes, rules, and precedents.... Rather, courts of equity must be governed by rules and precedents no less than the courts of law."*Lonchnar v. Thomas,* 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1995). Habeas proceedings brought by state prisoners are governed by a discrete set of rules. *See*Rules Governing Section 2254 Cases in the United States District Courts (codified after 28 U.S.C. § 2254) ("Habeas Rules"); *Mayle v. Felix,* 545 U.S. 644, 654, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). The final Habeas Rule, Rule 11, provides that the "Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or [the habeas] rules, may be applied to a proceeding under these rules."Habeas Rule 11; *see also*Fed.R.Civ.P. 81(a)(4) (providing that the Rules of Civil Procedure apply in habeas cases to the extent that those rules do not conflict with the Habeas Rules or other

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
**(Cite as: --- F.3d ----, 2008 WL 795360)**

statutory provisions); *Mayle,* 545 U.S. at 654-55 (discussing the application of the civil rules to a habeas proceeding).

*5 Civil Rule 60 governs relief from judgments or orders. *See*Fed. R. Civ. P. 60. Specifically, "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence."[FN4]*Gonzalez v. Crosby,* 545 U.S. 524, 528, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005). As the Supreme Court has stated, "Rule 60(b) has an unquestionably valid role to play in habeas cases."*Id.* at 534.In *Gonzalez,* the Supreme Court held that a habeas petitioner may move for relief from denial of habeas under Rule 60(b) so long as the motion is not the equivalent of a successive petition.[FN5]*Id.* at 535-36.In doing so, the Court noted that "[i]n some instances ... it is the State, not the habeas petitioner, that seeks to use Rule 60(b), to reopen a habeas judgment *granting* the writ."[FN6]*Id.* at 534 (emphasis in the original) (citing *Ritter v. Smith,* 811 F.2d 1398, 1400 (11th Cir.1987)).

[8] Moreover, Rule 60, before the 2007 Amendments, specifically provided that "the procedure for obtaining relief from a judgment shall be by motion as prescribed in [the Civil] rules or by an independent action."Fed.R.Civ.P. 60(b). Although the 2007 Amendments deleted that provision "as unnecessary," the 2007 advisory committee notes make clear that "[r]elief [from the judgment] continues to be available only as provided in the Civil Rules or by independent action."Fed.R.Civ.P. 60 advisory committee notes on 2007 amendments; *see also* 12 James Wm. Moore, *Moore's Federal Practice* § 60.40 (3d ed. 2006) ("[A]part from a motion under Rule 60(b), and independent action in equity, statutory procedures, and the court's inherent power to set aside judgments for fraud on the court, there are no other recognized means, outside of a timely appeal, for relief from a final judgment or order.").FN7 Therefore, we hold that the district court has the authority to modify a conditional writ

in order to give the State more time to cure the constitutional deficiency, but that such modifications are governed by the Habeas Rules and, by incorporation, the Rules of Civil Procedure, including Rule 60.

**II. Applying Civil Rule 60 to Harvest's Conditional Writ**

[9] Even though the State's motion to the district court was labeled as an "Application to Amend Order Nunc Pro Tunc," we treat it as a Rule 60(b) motion. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.,* 248 F.3d 892, 898-99 (9th Cir.2001) ("a motion for reconsideration ... is treated as a Rule 60(b) motion" if it is filed more than ten days after entry of judgment); *see also* 12 Moore, *supra,* § 60.64 ("Nomenclature is not important. The label or description that a party puts on its motion does not control whether the party should be granted or denied relief.").

On appeal, the State argues that Rule 60(b)(1)'s excusable neglect standard provides sufficient grounds for the district court to reopen the conditional writ. Rule 60(b)(1), however, grants the power to "correct judgments ... which have issued due to inadvertence or mistake."*Am. Trucking Ass'ns v. Frisco Transp. Co.,* 358 U.S. 133, 145, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958)); *see*11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2858, at 276 (2d ed.1995) (noting that Rule 60(b) empowers courts "to relieve the oppressed from the burden of judgments unfairly, fraudulently or mistakenly entered" (internal citation and quotations marks omitted)). As the advisory committee notes state, the rule is designed to provide relief "where the judgment is taken against the party through ... mistake, inadvertence, etc."Fed.R.Civ.P. 60 advisory committee notes to the 1946 amendment. The State, however does not argue that the conditional writ was issued due to a mistake or excusable neglect; rather, the contention is that the State deserves relief from the judgment due to its failure timely to carry out the terms of the conditional writ. The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

State's mistake, a "mistake" that came after the issuance of the order, did not result in the issuance of the order. Rule 60(b)(1), however, is not designed to provide relief for mistakes that come after the issuance of the order. Because the issuance of the conditional writ was not due to inadvertence or mistake, Rule 60(b)(1) and its excusable neglect standard do not apply in this case.[FN8]

*6 [10][11] We next examine whether Rule 60(b)(5), which "codifies the long-established principle of equity practice that a court may, in its discretion, take cognizance of changed circumstances and relieve a party from a continuing decree,"*Gilmore v. California,* 220 F.3d 987, 1007 (9th Cir.2000), provides the proper vehicle through which the conditional writ may been modified in this case. To be sure, Rule 60(b)(5) applies only to those judgments that have prospective application. "The standard used in determining whether a judgment has prospective application is whether it is executory or involves the supervision of changing conduct or conditions."*Maraziti v. Thorpe,* 52 F.3d 252, 254 (9th Cir.1995) (internal quotation marks and citations omitted). A conditional writ of habeas corpus quite clearly "involves the supervision of changing conduct or conditions."As the Seventh Circuit described it:

> A conditional order's framework contemplates that a district court will eventually make an assessment concerning compliance with its mandate. In many cases, whether or not the state has complied will be apparent-where, for instance, a court orders a new hearing and the state completely fails to provide one. In these cases, a specific assessment concerning compliance may be unnecessary-the writ will simply issue because it is apparent that the state has not fulfilled the mandate. In other cases, however, the district court will need to examine the content of the state's action to determine whether compliance was sufficient.

*Phifer,* 53 F.3d at 865. Indeed, in this case, the conditional writ itself clearly contemplated continued supervision in that it ordered the State to "file and serve a notice of compliance with this Order no later than sixty (60) days from the date of this Order ."Therefore, we treat the State's motion to modify the conditional writ as a Rule 60(b)(5) motion.

[12][13][14] Under Rule 60(b)(5), modification of the conditional writ is warranted if there is a significant change either in factual conditions or in law."*See Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *see also Gilmore,* 220 F.3d at 1007. The party seeking the modification has the burden of demonstrating that such a change has occurred. *Rufo,* 502 U.S. at 384. Therefore, when the State proves that there has been an intervening change in the law, *see, e.g., Ritter,* 811 F.2d at 1403 (setting aside conditional writ in light of "extraordinary" circumstance of an intervening Supreme Court decision which made clear that the petitioner was not entitled to the habeas relief he had been granted); FN9*cf. Rufo,* 502 U.S. at 388 ("[M]odification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent."), or demonstrates that the petitioner's actions have inhibited the efforts of the State to retry or resentence the petitioner, *see, e.g., Gibbs,* 500 F.3d at 208 (granting the Commonwealth's motion to modify the conditional writ when the Commonwealth demonstrated that the petitioner was at least partially at fault for the delay); *Chambers,* 16 F.3d at 261 n. 2 (same), modification of the writ may be appropriate. In this case, however, the State has demonstrated no "significant change[s] either in factual conditions or in law."*See Rufo,* 502 U.S. at 384. Therefore, modification pursuant to Rule 60(b)(5) was unwarranted.

*7 [15][16][17] Civil Rule 60(b)(6), the so-called catch-all provision, which provides that on motion "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... any other reason [in addition to those

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                          Page 11
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
**(Cite as: --- F.3d ----, 2008 WL 795360)**

categories specified in Rules 60(b)(1)-(5) ] that justified relief,"Fed R. Civ. P. 60(b)(6), also does not provide an avenue for modification of the conditional writ. A party moving for relief under Rule 60(b)(6)"must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the action in a proper fashion."*Latshaw v. Trainer Wortham & Co., Inc.,* 452 F.3d 1097, 1103 (9th Cir.2006) (internal quotation marks and alteration omitted). We have cautioned that this Rule is to be "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment."*Id.* (quoting *United States v. Washington,* 394 F.3d 1152, 1157 (9th Cir.2005)). Even assuming that the State can show that it has suffered an injury, it has not demonstrated that there were any "circumstances beyond its control." Indeed, the State's counsel acknowledges that the circumstances were under his control and that his error was "professionally inexcusable."

We therefore conclude that the State has failed to demonstrate that relief was warranted under Rule 60; thus, that the district court abused its discretion when it modified the conditional writ.

**CONCLUSION**

We hold that when the State fails to cure the constitutional error, *i.e.,* when it fails to comply with the order's conditions, and it has not demonstrated that it deserves relief from the judgment under Rule 60 or the other mechanisms provided for in the Rules, the conditional grant of habeas corpus *requires* the petitioner's release from custody. Because the State has failed to demonstrate that relief under Rule 60 was warranted, we reverse the order of the district court and direct it to issue an unconditional writ of habeas corpus releasing Harvest from custody.FN10

**REVERSED AND REMANDED.**

FN* The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

FN1. The State's delay also provided time for the superior court to issue a no-bail warrant for Harvest's arrest.

FN2. Additionally, the Eleventh Circuit, in a per curiam opinion, concluded that the district court had the power to give the State additional time to resentence the petitioner to death even though the district court "ordered that 'petitioner within 180 days after this order becomes final by failure to appeal or by mandate of the circuit court of appeals shall be afforded a new sentencing phase trial, failing which upon motion a writ of habeas corpus discharging him from custody shall issue.' " *Moore v. Zant,* 972 F.2d 318, 319 (11th Cir.1992) (per curiam) (citation omitted). In that case, the State argued that the "delay in resentencing had been caused by confusion on the part of the state Attorney General's office." *Id. Moore,* however, is not particularly helpful because the *Moore* court did not read the district court order as a discharge order; instead, it "read [the order] as saying that, unless [petitioner] were resentenced within 180 days, [petitioner] would have to be treated by [the State] not as someone in its custody pursuant to a death sentence, but as an unsentenced person." *Id.* at 320.

FN3. Of course the district court also had the authority to deny the extension. For example, in *Satterlee,* the district court issued a conditional writ and when the State failed to act within the allotted time, the district court ordered the petitioner's immediate release. 453 F.3d at 368-69. The State challenged the district court's order and the Sixth Circuit affirmed, reasoning that "[w]hen the state fails to cure the er-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514
(Cite as: --- F.3d ----, 2008 WL 795360)

ror, i.e., when it fails to comply with the order's conditions, a conditional grant of habeas corpus *requires* the petitioner's release from custody."*Id.* at 369 (emphasis in original).

FN4.Rule 60(b) provides:

Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).

FN5. If the motion seeking relief from the judgment is, in reality, a successive petition, the motion would be "inconsistent with" the Anti-Terrorism and Effective Death Penalty Act. *Gonzalez,* 545 U.S. at 531. Like the other Civil Rules, Rule 60 applies only "to the extent that [it is] not inconsistent with any statutory provisions

or [the habeas] rules [.]"Habeas Rule 11.

FN6. The Supreme Court has also explicitly held that Rule 52(b) and Rule 59 apply in habeas corpus proceedings. *Browder v. Director,* 434 U.S. 257, 27-71 (1978). The State, therefore, could have brought a Rule 52(b) or 59 motion to modify the conditional writ as well. The deadlines under Rule 52(b) and 59, however, are strict. *See Carter v. United States,* 973 F.2d 1479, 1488 (9th Cir.1992) ("The district court has no discretion to consider a late Rule 59(e) motion."). Thus, once the State failed to move to amend the judgment within 10 days, a Rule 52(b) or 59 motion was no longer available.

FN7. The advisory committee notes make plain that "[t]he language of Rule 60 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only."Fed.R.Civ.P. 60 advisory committee notes on 2007 amendments.

FN8. Moreover, because "Rule 60(b)(1) guides the balance between the overriding judicial goal of deciding cases correctly, on the basis of their legal and factual merits, with the interest of both litigants and the courts in the finality of judgments,"*TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 695 (9th Cir.2001), "[n]early all of the cases in which relief has been granted [under the excusable neglect standard] involve situations in which a party was prevented from [obtaining an adjudication on the merits],"*see* John J. Cound et al., *Civil Procedure* 1109-10 (8th ed.2001), such as a default judgment, *see e.g., TCI Group Life Ins. Plan,* 244 F.3d at 697-701, dismissal for failure to prosecute, *see, e.g., Torres v. S.S. Pierce Co.,* 471 F.2d 473,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

474 (9th Cir .1972) (per curiam), or summary judgment based on failure timely to respond to a summary judgment motion, *see, e.g., Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1224-25 (9th Cir.2000). In this case, the district court issued the conditional writ after the merits of Harvest's habeas petition had been extensively litigated.

FN9. *Ritter,* cited favorably by the Supreme Court in *Gonzalez,* is instructive here. In *Ritter,* the State filed a Rule 60(b) motion more than 10 days after the district court issued the conditional writ, but before the 180 days the district court had allowed for resentencing had elapsed. 811 F.2d at 1400, *cited approvingly by Gonzalez,* 545 U.S. at 534. In that case, the Eleventh Circuit had issued a mandate instructing the district court to issue the writ of habeas corpus because Alabama's capital statute was facially unconstitutional. *Id.* Pursuant to this mandate, the district court entered a conditional order giving Alabama 180 days to resentence the petitioner. *Id.* After the conditional writ had been issued by the district court, the Supreme Court granted certiorari in a case involving the question whether Alabama's capital statute was facially unconstitutional. *Id.* In response to the granting of certiorari, the State moved for an extension of the time within which Alabama could resentence the petitioner. *Id.* The Supreme Court eventually held that the statute was constitutional. *Ritter,* 811 F.2d at 1400; *see also Baldwin v. Alabama,* 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). In response to *Baldwin,* the State filed a motion, pursuant to Rule 60(b)(6), to set aside the order conditionally granting the writ, which the district court granted. *Ritter,* 811 F.2d at 1400. The petitioner appealed and the Eleventh Circuit affirmed the district court's order

setting aside the conditional writ, reasoning that the Supreme Court decision was an extraordinary circumstance, but noting "that a change in the law will not *always* provide the truly extraordinary circumstances necessary to reopen a case." *Id.* at 1401 (emphasis in the original).

FN10. Our granting of an unconditional writ of habeas corpus does not, itself, preclude the State from rearresting and retrying Harvest. *See Gardner v. Pitchess,* 731 F.2d at 640 (9th Cir.1984) (reversing order that barred rearrest and retrial); 2 Hertz & Liebman, *supra,* § 33.3, at 1686 ("[F]ederal courts usually permit rearrest and retrial after the time period specified in the conditional release order has elapsed and the prisoner has been released.").

C.A.9 (Cal.),2008.
Harvest v. Castro
--- F.3d ----, 2008 WL 795360 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3514

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IDRISA SESAY, | ) | |
| | ) | Crim No. 07CV2354-JM (LSP) |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| MICHAEL CHERTOFF, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

        Counsel for Petitioner certifies that the foregoing pleading, is true and accurate to the best of his information and belief, and that a copy of the foregoing Petitioner's Reply to Respondents' Supplemental Return has been electronically served this day upon:

        **Samuel William Bettwy**
        Samuel.Bettwy@usdoj.gov,jaclyn.penley@usdoj.gov,efile.dkt.civ@usdoj.gov,pamela.bradley@usdoj.gov

Dated: April 14, 2008

                          */s/ James Fife*
                          JAMES FIFE
                          Federal Defenders
                          225 Broadway, Suite 900
                          San Diego, CA 92101-5030
                          (619) 234-8467  (tel)
                          (619) 687-2666  (fax)
                          james_fife@fd.org