**JAMES FIFE**
California State Bar No. 237620
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5030
Telephone No. (619) 234-8467
Email: james_fife@fd.org

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE  JEFFREY T. MILLER)**

| | |
|---|---|
| **IDRISA SESAY,** | Case No.  07CV2354-JM (LSP) |
| **Petitioner,** | |
| **v.** | |
| **MICHAEL CHERTOFF, et al.,** | **PETITIONER'S  MEMORANDUM OF LAW AND PROPOSED PLAN RE: DISCOVERY** |
| **Respondents.** | |

On May 7, 2008, this Court ordered that Petitioner file any supplemental briefing on the scope of discovery by May 23, 2008.  Respondents may reply by June 2, 2008.  A status conference was scheduled for June 9, 2008.

**A.   Legal Basis for Discovery in Habeas Corpus Proceedings.**

Habeas corpus proceedings in federal court are governed primarily by the provisions in chapter 153 of Title 28.  Although § 2243 authorizes the holding of an evidentiary hearing in order for the Court to decide the disputed issues, "with respect to methods for securing facts where necessary to accomplish the objective of the proceedings Congress has been largely silent."  Harris v. Nelson, 394 U.S. 286, 299 (1969).  The only

section in chapter 153 that makes express reference to modes of discovery is § 2246, which states that if a party submits affidavits in support of its position, "any party shall have the right to propound written interrogatories to the affiants."

Fed. R. Civ. P. 81(a)(4) states that the general civil procedure rules, including the rules of discovery, apply to habeas corpus proceedings "to the extent" that the procedure is not covered in the specific statutes or the Rules governing § 2254 or § 2255 petitions and "has previously conformed to the practice in civil actions." The significance of this latter qualification was addressed by <u>Harris</u>.

The <u>Harris</u> Court held in that this qualification placed in Rule 81 indicated the drafters' intention to limit the scope of the new civil procedure rules in habeas actions. <u>See</u> 394 U.S. at 295. However, the Supreme Court makes it clear that this limitation is not because habeas petitions are too unimportant to warrant detailed discovery procedures, but because they are procedurally *sui generis,* and so greater flexibility is needed to craft procedural rules appropriate to their unique characteristics. <u>See</u> <u>id.</u> at 294-96. For example, <u>Harris</u> noted that the usual procedure for using interrogatories was inapt in a habeas case, where the definition of "adverse party" creates "burdensome" complications. <u>Id.</u> at 296. Moreover, because habeas petitions are often prosecuted "without the guidance or restraint of members of the bar," the courts need to be more circumspect on matters such as discovery so that the efficacy and dispatch of the writ are not diluted. <u>Id.</u> at 297.

But saying that the civil "discovery provisions do not apply *completely and automatically*" to habeas corpus petitions "is not to say that there is no way in which a district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of the hearing, of the facts relevant to

disposition of a habeas corpus petition." <u>Id.</u> at 298 (emphasis added).  The key concept in the Supreme Court's characterization of the role of discovery in habeas cases is "flexible provision" of discovery tools appropriate to the circumstances. <u>Id.</u> at 299.  Indeed, given the statutory duty of the habeas courts to "dispose of the matter as law and justice require," 28 U.S.C. § 2243, if "[a]t any time in the proceedings" it appears necessary to allow discovery to achieve this goal, the district courts have inherent power to "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, *this is the inescapable obligation of the courts*." 394 U.S. at 299 (emphasis added). Indeed, because it may obviate the need for an actual hearing, the courts should grant discovery whenever good cause is shown, regardless of whether a hearing has been ordered.  <u>See</u> <u>Jones v. Wood</u>, 114 F.3d 1002, 1009 (9th Cir. 1997).

<u>Harris</u>, far from withdrawing the usual tools of civil discovery from the realm of habeas petitions, indicates that the courts have a *duty* to allow those specifically tailored procedures "necessary to . . . a fair and meaningful evidentiary hearing." 394 U.S. at 300.  And if the petitioner makes the initial showing that he "may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." <u>Id.</u>  The habeas petitioner is not precluded from the full range of civil discovery tools and may request any "familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles of law.' " <u>Id.</u>

Apart from the ability to propound affiant interogatories, which § 2246 describes as a matter of "right," the scope and manner of discovery in this case is in the sound discretion of the Court, bearing in mind (1) its

duty to provide a full and fair ventilation of the issues and (2) the Supreme Court's particular motivation in

<u>Harris</u> for protecting the habeas process from litigants unguided and unrestrained by counsel.  It should be

noted, too, that the specific provisions for discovery in Rule 6 in 28 U.S.C. foll. § 2254 and 28 U.S.C foll.

§ 2255 apply only to those specific forms of habeas corpus, not to petitions brought under § 2241.  <u>Harris</u>

does not even mention § 2241 petitions, and the Advisory Committee Note to the 2002 amendment which

added the present wording in Rule 81(a)(4)(A) referring to §§ 2254 and 2255 (only) specifically states that

the drafters deleted "an inadvertent reference to § 2241 proceedings" which appeared in the original draft rule.

Fed. R. Civ. P. 81 advisory committee note (2002).  Although Rules Governing § 2254 Cases, Rule 1(b), 28

U.S.C. foll. § 2254, states that district courts "may apply any or all of these rules" to other forms of habeas

corpus, the express deletion of § 2241 from Fed. R. Civ. P. 81(a)(4)(A) would suggest that the drafters did

not intend § 2241 petitions to be subject to the same particular provisions and limitations laid out for state

and federal prisoner petitions.

**B.  <u>Scope of Discovery</u>.**

   <u>Harris</u> indicated that habeas discovery is not subject to the broad scope permitted in civil cases under

Fed. R. Civ. P. 26(b)(1), since such an inquiry is "neither necessary nor appropriate in the context of a habeas

corpus proceeding."  394 U.S. at 297.  That is because habeas corpus petitions are usually inherently more

focused by having an extensive litigation record on which to build.  But where the specific allegations and

issues arising in the petition require additional investigation and discovery to provide the court with a  proper

basis for ruling, then–depending on the specific matters at issue at the evidentiary hearing–the court can and

should order the use of appropriately tailored discovery procedures.

In this case, the only facts in dispute are those going to Respondents' <u>Pelich</u> argument; the basic facts underlying the original <u>Zadvydas</u> claim are established and undisputed. Petitioner maintains that, properly, the only point of reference for the evidentiary hearing is the precise reason **why Sierra Leone has not issued travel documents**: whether it is due to Petitioner's claim of Sudanese nationality, as Respondents argue; due to presentation of a false passport, as Petitioner claims; or due to some third reason, such as lack of diligence or aversion to accepting deportees with criminal convictions. Although Petitioner recognizes that the question of nationality indirectly addresses the reason for the prolonged delay in removal, it should be borne in mind that the primary question for the <u>Pelich</u> issue is the *reason for refusal*, not actual nationality.

In that light, Petitioner urges the district court to permit the following discovery tools in preparation of the evidentiary hearing. Petitioner's requests are narrowly tailored to the question at issue, as indicated above, and to meet the Court's specific requests for further information. As a general principle, Petitioner urges that the discovery plan be relatively informal and flexible, but that it include full reciprocity at a reasonable time before the hearing to permit informed presentation and argument to the Court.

**C.    Petitioner's Proposed Discovery Plan.**

**(1) Court's Expert Witness**. Petitioner is continuing to seek a suitable court's expert on African conditions who can evaluate Petitioner's assertions and render an informed opinion for the Court. Since success depends not just on expertise, but on willingness and scheduling, the efforts remain ongoing. Petitioner pledges to cooperate to the extent possible with Respondents to reach a joint recommendation, but failing that, will propose separately a candidate for the Court's selection.

**(2) Testimony of Petitioner**. Petitioner's rendition of his personal history is the heart of the nationality

question. Also, he personally participated in the interviews with the Sierra Leone officials and discussed with them his nationality and the origins of the documentation provided by ICE. His credibility is key to this Court's decision. Accordingly, counsel intends to call Petitioner as a witness at the hearing, where the Court can best assess his evidence and carry out its truth-seeking function.

Moreover, Petitioner hereby formally requests this Court to order his production so that he may attend the hearing. Habeas prisoners have no absolute right of attendance at hearings under 28 U.S.C. § 2243, particularly if only legal matters are considered. "[P]etitioner's presence is not necessary in all circumstances. It is not essential that petitioner be physically present at the preliminary inquiry as to the propriety of issuing the writ, or where the petitioner's testimony is not essential." 39A C.J.S. Habeas Corpus § 269 (2008) (footnotes omitted). But when an issue of fact is presented, "the only admissible procedure" is to have the petitioner produced at an evidentiary hearing. Walker v. Johnston, 312 U.S. 275, 286 (1941). "It is the right of the petitioner to be present at the hearing where there are questions of fact to be litigated." 39A C.J.S. Habeas Corpus § 269.

Because Petitioner will be present at the hearing, he requests the Court not authorize the cumbersome and duplicative process of a deposition. Respondents will have a full and fair opportunity to examine Petitioner on any relevant matters at the hearing, where the Court can directly assess his statements and demeanor.

**(3) Interrogatories, Interviews, and Subpoenas Under Fed. R. Crim. P. 17(b).**

Pursuant to 28 U.S.C. § 2246, stating that "any party *shall have the right* to propound written interrogatories to the affiants" (emphasis added), Petitioner hereby informs the Court and Respondents that

he intends to propound interrogatories to Deportation Officer William Pitt, whose declaration Respondents submitted as evidence with their Supplemental Return.

Petitioner requests the Court's permission to serve interrogatories on two other ICE officials intimately involved in the contested issues within the scope of the hearing.  However, if Respondents can facilitate interviews with these officers, it may avoid the need for written interrogatories.  Depending on the outcome of these interviews, however, Petitioner may request subpoenas for all three ICE officers to testify at the evidentiary hearing.

(a) Deportation Officer Andy Padilla. <u>Relevance</u>: According to Officer Pitt's Declaration, Officer Padilla was the actual deportation officer assigned to Petitioner's case at the time of the original efforts to contact the Sierra Leone embassy, until Officer Pitt took over in October 2007.  Counsel's information is that Officer Padilla was present at both the June and August telephone conferences between Petitioner and the consular officers, during which conversations Petitioner was told that his passport was suspicious. Officer Padilla therefore can shed light on the details of these interviews.  Officer Padilla's contacts with the consulate can also elucidate the note offered into evidence by Respondents that the consul did not believe Petitioner's claim to be Sudanese, which contradicts Respondents' <u>Pelich</u> argument.

(b) Agent John Thomas. <u>Relevance</u>: The December 2007 custody review report authored by Agent Thomas and submitted by Respondents as evidence in their Supplemental Return is the only basis for Respondents' central argument that Sierra Leone has refused to issue travel documents because of Petitioner's claim to Sudanese nationality.  That assertion by Agent Thomas is not substantiated by any of the contact notes listed in the custody review report itself or in the printouts submitted by Respondents.  Agent Thomas

apparently did not participate personally in any of the telephone interviews with the consulate. The source of this crucial assertion is of primary importance to the actual reason why travel documents have not issued.

**(4) Production of Documents (Fed. R. Civ. P. 34).**

Respondents submitted as evidence attached to their Supplemental Return a partial TECS printout purporting to relate to Petitioner's entry into the country in 1986. However, the document is incomplete and does not even show the name or other identifying information for the person to whom the entry is meant to relate. Nor does it show if the person entered alone or with others. Since this exhibit shows that Respondents have ready access to the TECS records of this entry, Petitioner requests that this Court order production of all other TECS records for the New York POE on July 26, 1986, narrowed, if possible, to within a couple hours of the proffered record or associated with the same flight. In addition, Petitioner requests that the Court order production of any additional TECS data that definitively connects this entry with Petitioner. Such records would address either Respondents' allegation that Petitioner entered the United States with an "uncle," presumably on a flight from Sierra Leone, or Petitioner's claim that he was brought in by his slave master and his family from South Africa.

In addition, Petitioner requests the Court order production of copies of all correspondence between ICE officials and the Sierra Leone diplomatic mission concerning Petitioner, as well as the packet of information and documents ICE originally or subsequently provided to the Sierra Leonean officials in support of the request for travel documents. Alternatively, if such items are known to exist in Petitioner's full A-file, Petitioner requests additional access to the full A-file to copy those documents.

/ / /

**(5) Other Witnesses.**

Petitioner proposes to call an expert witness to verify Petitioner's linguistic background.  He has not yet determined that expert, but will name him or her in due course and provide the customary expert discovery.  Petitioner will also seek a subpoena to facilitate appearance at the hearing.  Depending on the precise expertise of the Court's expert, additional testimony may be needed going to the specific history of Sudan, the modern status and conditions of slavery in Africa, and information on material, cultural and religious conditions in Western Darfur in the 1970s and '80s.

Petitioner is still considering the possibility of calling as witnesses acquaintances of Petitioner who can confirm those aspects of Petitioner's history known to them and/or the dates and conditions under which he disclosed that information.  As most of the witnesses known to counsel are out of state, the alternative of using affidavits per § 2246 is being explored, but Petitioner raises this now to alert the Court to the possible need of out-of-state witnesses.

**(6) Reciprocal Exchange of Evidence.**

Petitioner proposes that the Court set a date of 5 or 10 days prior to the hearing for the reciprocal exchange of evidence to be presented by the parties at the hearing.  Such exchange should include the items covered by Fed. R. Civ. P. 26(a)(1) & (2), viz. expert identity and reports, names and contacts for witnesses, and documentary evidence to be proffered.  The Court should waive the formalities of Rule 26(a)(4), but should order that, between the exchange date and the hearing, the duty to disclose be ongoing, should a party decide to present any additional evidence not disclosed before.

**CONCLUSION**

The Court has the power and duty to tailor discovery appropriate to the full and fair conduct of the ordered evidentiary hearing.  Petitioner's discovery requests are restricted to matters at issue on the disputed <u>Pelich</u> argument and are necessary to allow him to corroborate his claims (1) that Sierra Leone has not issued travel permission because of a false passport and (2) that his claim to Sudanese nationality is true.  The reciprocal exchange proposal ensures that there will be no 'hearing by ambush' on either side, affording the Court the maximum opportunity to consider evidence and argument from fully informed litigants.

Respectfully submitted,

Dated:  May 23, 2008                    *s/ James Fife*

**JAMES FIFE**
**Federal Defenders of San Diego, Inc.**
Attorneys for Petitioner SESAY
james_fife@fd.org