KAREN P. HEWITT
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California State Bar No. 094918
CAROLINE CLARK
Assistant U.S. Attorney
California State Bar No. 220000
RAVEN M. NORRIS
Assistant U.S. Attorney
California State Bar No. 232868
U.S. Attorney's Office
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7119 / 7491 / 7157
Facsimile:  (619) 557-5004

Attorneys for Respondents

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IDRISA SESAY,<br><br>              Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of Homeland Security, et al.,<br><br>              Respondents. | Case No. 07cv2354 JM (LSP)<br>[A77 062 688]<br><br>THE GOVERNMENT'S PROPOSED DISCOVERY PLAN FOR DETERMINING THE NATIONAL ORIGIN OF PETITIONER |

I

INTRODUCTION

On May 7, 2008, the Court announced its intent to convene an evidentiary hearing to reach the ultimate issue of whether Petitioner Sesay has failed to cooperate with the efforts of Immigration and Customs Enforcement ("ICE") to obtain a travel document for his removal. To that end, the Court seeks to determine the true national origin of Sesay, more specifically whether he is, as he now claims, a native of the Dinka tribe of Sudan or, as he claimed for twenty years until recently, a native and citizen of Sierra

Leone. The Court requested proposed discovery plans from the parties whereby relevant and reliable evidence can be obtained for presentation to the Court. For the reasons set forth below, the Government proposes a discovery deadline of July 11, 2008, by which the Government will take Sesay's deposition and experts will have interviewed Sesay. Experts would be required to complete their reports by July 25, 2008. The evidentiary hearing should be scheduled to take place no earlier than August 15, 2008. The Government requests that the schedule remain flexible, subject to the availability of experts, especially during the summer months.

As set forth below, the Government recommends an anthropological approach, which would include consideration of cultural, linguistic and biological factors. Sesay has suggested a linguistic approach, yet he claims that he was forced to leave the Sudan at the age of eight, that he cannot speak Dinka, and that he has a limited understanding of the Dinka language. Therefore, a purely linguistic approach is unlikely to provide conclusive results. Anthropologically, Dinkas are a remarkably homogenous group, so a broader, anthropological approach promises to be highly conclusive as to whether Sesay is being truthful when he states that he is a Dinka.

Sesay continues to propose discovery to determine the cause of the Sierra Leone consulate's unwillingness to issue a travel document. At best, Sesay's proposal is premature since he now insists that he is not a native and citizen of Sierra Leone and that he is from Sudan. Since this Court's findings and rulings will likely render moot or change the Sierra Leone consulate's current reluctance, discovery of the reasons for its reluctance would be a waste of the Court's and Government's resources. If the Court determines that Sesay is, as he now claims, from the Sudan, the Sierra Leone consulate's reasons will be rendered moot. And, if the Court determines that Sesay is from Sierra Leone, and Sesay abides by the Court's finding by cooperating with efforts to obtain a travel document, the Sierra Leone consulate will naturally re-evaluate whether to issue a travel document.

II

PROPOSED DISCOVERY

A.  DEPOSITION OF PETITIONER SESAY

Sesay has made several contradictory statements concerning his national origin, some of them under oath. The Government needs to obtain Sesay's full, current testimony to determine whether it can be corroborated. At the May 7, 2008 hearing, the Government stated its desire to take Sesay's deposition as soon as possible so that follow-up research and discovery could be conducted, but his attorney now objects to the Government's taking the deposition. The Government therefore seeks this Court's formal approval of the Government's taking Sesay's deposition in advance of the evidentiary hearing in this case. The Government also requests that the evidentiary hearing be scheduled no earlier than thirty days after the discovery deadline so that the Government can conduct follow-up research and discovery.

B.  COURT-APPOINTED FORENSIC ANTHROPOLOGIST

Sesay claims to be a member of the Dinka tribe of Sudan. The Dinkas are a Nilotic people, meaning a people that settled along the Nile River. Fortunately, for the sake of this Court's inquiry, the Nilotic people and the Dinka are remarkably homogenous populations with relatively isolated genetic structures, which means that they exhibit highly unique anthropological traits. The Government proposes that Sesay be evaluated by Richard Lobban, PhD, Chair and Professor of Anthropology at Rhode Island College, Executive Director of the Sudan Studies Association, and Adjunct Professor of African Studies at the Naval War College. Attached is a copy of his resume.

Sesay has proposed a cultural expert on the Sudan. [Memo at 9.] As Executive Director of the Sudan Studies Association, Dr. Lobban can provide the information sought by Sesay. Also, Dr. Lobban has written many articles on slavery, including *Ending Slavery in Sudan*, THE PROVIDENCE JOURNAL (8 June 1999).

///

The Government proposes that Dr. Lobban or an associate interview Sesay, preferably in-person, prepare a report, and testify at the evidentiary hearing, either in-person or by telephone.

Dr. Lobban's fee schedule is as follows:

$150/hour for work performed

$500/day for travel days (when no work performed)

In addition, as learned through preliminary consultations with potential experts, there may be biological factors worth considering that require obtaining a DNA and/or blood sample (possibly for Rh factors and infectious disease markers, for example) from Sesay. Dr. Lobban has indicated that he will enlist the help of linguistic and biological experts in the field of anthropology, where needed, to complete his evaluation.

C.   SESAY'S PROPOSED DISCOVERY

Sesay is proposing interviews with, and/or interrogatories propounded to, ICE deportation officers. [Memo at 6-7.] The Government does not intend to present the testimony of deportation officers for purposes of the Court's evidentiary hearing and opposes such proposed discovery for being premature until the Court has made findings regarding Sesay's claims. This Court's findings and rulings are likely to change or render moot any current reluctance by the Sierra Leone consulate to issue a travel document.[1]

///
///
///

---

[1] Sesay also asserts that, under 28 U.S.C. §2246, he has a right to propound interrogatories to Officer Pitt since his declaration accompanied one of the Government's pleadings in this case. Section 2246 provides for such discovery when an affidavit has been admitted into evidence. However, the Government has not offered the declaration as evidence in connection with this Court's evidentiary proceeding, and it does not intend to offer the testimony of Officer Pitt, either in-person for by declaration, as part of such proceeding.

Finally, the Government continues to oppose any further contact by Sesay or his attorneys with Sierra Leone consular officials. Because Sesay claims that he is not from Sierra Leone, he cannot assert a right to make contact with Sierra Leone consular officials. In addition, the Government has noted a recent and growing trend in this judicial district, compared to others, of consular officials' expressing reluctance, for a variety of reasons, to issue travel documents. The Government has also learned of specific instances in which habeas petitioners and/or their attorneys have made statements to consular officials which have the effect, whether or not intended, of impeding the issuance of travel documents.

Once the removal period has commenced, all communications with the consulate should be for the sole purpose of facilitating the issuance of a travel document. With few exceptions, all other communications would be unnecessary or even improper, especially when a matter is under Court supervision in habeas proceedings. During habeas proceedings, the Court should direct counsel that all communications with the consulate be through ICE officials. The vast majority of habeas petitioners, in addition to seeking release, do not want to be repatriated. Therefore such petitioners and their attorneys have a real conflict of interest when communicating with the consulate after a removal order has become final and executable.

The Government does not oppose any discovery proposed by Sesay that is fairly designed to determine his true nationality.[2/] The Government will provide Sesay with a copy of his A-File, but opposes all other discovery that is designed to determine the reasons for the Sierra Leone consulate's current reluctance to issue a travel document.

///

---

[2/] Sesay seeks certain printouts from the Government's TECS-NIS database. The Government will do what is feasible to locate evidence of Sesay's entry, which he alleges occurred in July 1986 at New York City. If Sesay can provide the name and nationality used by the person who accompanied him, the Government will conduct a search for that person's entry as well.

III

CONCLUSION

For the reasons set forth above, the Court should appoint Dr. Richard Lobban as expert in this case and should limit discovery to the issue of Sesay's true nationality. The Government proposes a discovery deadline of July 11, 2008, by which the Government will take Sesay's deposition and experts will have interviewed Sesay. Experts would be required to complete their reports by July 25, 2008. The evidentiary hearing should be scheduled to take place no earlier than August 15, 2008. The Government requests that the schedule remain flexible, subject to the availability of experts, especially during the summer months.

DATED: June 2, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ *Samuel W. Bettwy*

SAMUEL W. BETTWY
Assistant U.S. Attorney

CAROLINE CLARK
Assistant U.S. Attorney

RAVEN M. NORRIS
Assistant U.S. Attorney

Attorneys for Respondents