**JAMES FIFE**
California State Bar No. 237620
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5030
Telephone No. (619) 234-8467
Email: james_fife@fd.org

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE  JEFFREY T. MILLER)**

| | |
|---|---|
| **IDRISA SESAY,**<br><br>                              Petitioner,<br><br>              v.<br><br><br>**MICHAEL CHERTOFF, et al.,**<br><br>                              Respondents. | Case No.  07CV2354-JM (LSP)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I    SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II   RESPONDENTS HAVE DEFAULTED THEIR SUSPENSION DEFENSE AND SO CANNOT,
     AS A MATTER OF LAW, RELY ON ALLEGED OBSTRUCTION TO JUSTIFY THE
     EXCESSIVE DELAY IN REMOVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II   THERE IS NO FACTUAL BASIS FOR RESPONDENTS' PELICH DEFENSE, BECAUSE NO
     COMPETENT EVIDENCE SHOWS SIERRA LEONE HAS REFUSED TRAVEL DOCUMENTS
     AT ALL, LET ALONE A REFUSAL ON THE BASIS OF ANY ACT OR STATEMENT OF
     PETITIONER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III  IF THE COURT FINDS THE MATTER IS NOT FULLY DISPOSED OF BY RESOLUTION OF
     THE ABOVE ISSUES, AN EVIDENTIARY HEARING IS REQUIRED, BECAUSE OF
     SUBSTANTIAL DISPUTES ABOUT THE EXPERT'S FINDINGS AND THE NEED FOR THIS
     COURT TO ASSESS PETITIONER'S CREDIBILITY DIRECTLY . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

EXHIBITS A-C

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Andreasyan v. Gonzales,
    446 F.3d 1186 (W.D. Wash. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Blackledge v. Allison,
    431 U.S. 63 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Earp v. Ornoski,
    431 F.3d 1158 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ford v. Quarantillo,
    142 F. Supp.2d 585, 588 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Harvest v. Castro,
    ___ F.3d ___, 2008 WL 2669706 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kumho Tire Co., Ltd. v. Carmichael,
    526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pelich v. INS,
    329 F.3d 1057 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,3,5,6,7,9,10,11,12

Singh v. Gonzales,
    448 F. Supp.2d 1214 (W.D. Wash. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,5

Mau v. Chertoff,
    549 F. Supp.2d 1247, 1252 n.1 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Zadvydas v. Davis,
    533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,5,7,10

## FEDERAL STATUTES

8 U.S.C. § 1231(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,3,4,5,6

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## FEDERAL REGULATIONS

8 C.F.R. § 241.4(g)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

## FEDERAL RULES

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,8

Fed. R. Civ. P. 81(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Evid. 702 & 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1 | **JAMES FIFE**
California State Bar No. 237620
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, California 92101-5030
Telephone No. (619) 234-8467
4 | Email: james_fife@fd.org

5 | Attorneys for Petitioner

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | (HONORABLE JEFFREY T. MILLER)

11 | **IDRISA SESAY,**                          Case No. 07CV2354-JM (LSP)

12 |                    Petitioner,

13 |          v.                                **MEMORANDUM OF POINTS AND**
                                               **AUTHORITIES IN SUPPORT OF**
14 |                                            **MOTION FOR SUMMARY**
                                               **JUDGMENT OR ADJUDICATION**
15 | **MICHAEL CHERTOFF, et al.,**

16 |                    Respondents.

17

18 | **STATEMENT OF THE CASE**

19 | Petitioner Idrisa Sesay filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on

20 | December 17, 2007. Mr. Sesay sought release under the authority of <u>Zadvydas v. Davis</u>, 533 U.S. 678

21 | (2001), because there was no significant likelihood of his removal to Sierra Leone or any alternative

22 | destination in the reasonably foreseeable future.

23

24 | Respondents filed their Return on March 7, 2008. Respondents argued the Petition should be denied,

25 | because Mr. Sesay's statutory removal period has been extended under 8 U.S.C. § 1231(a)(1)(C), permitting

26 | continued detention under <u>Pelich v. INS</u>, 329 F.3d 1057 (9th Cir. 2003). Return at 4-6. Respondents also

27 | raised a related defense based on "unclean hands." Return at 7.

28

In his Traverse, Mr. Sesay disputed the <u>Pelich</u> claim, stating that he had reported truthfully his Sudanese origin to the Sierra Leone authorities and claimed that their reason for not issuing travel documents in a reasonable time is because Mr. Sesay's Sierra Leone passport was a forgery. Traverse at 2-11. He argued that Respondents had defaulted on their claim to suspend the removal period under 8 U.S.C. § 1231(a)(1)(C), because they had failed to serve a timely notice of non-compliance, citing <u>Singh v. Gonzales</u>, 448 F. Supp.2d 1214 (W.D.Wash. 2006). Traverse at 4-5. Moreover, the unclean hands doctrine does not apply to conduct unrelated to the removal process at issue in the Petition. Traverse at 12-13.

After supplemental briefing on the disputed issues of nationality to the immigration judge, the Court decided to hold an evidentiary hearing and ordered the parties to submit discovery plans and to select a court's expert to assess the evidence of Petitioner's nationality. Mr. Sesay's discovery plan included interrogatories under 28 U.S.C. § 2246 to Officer William Pitt. At a second status hearing on June 9, 2008, the Court resolved discovery issues and granted additional time for agreement on an expert. On June 17, 2008, the Court approved a joint motion to appoint Richard Lobban as the expert witness.

At a third status hearing on July 7, 2008, the Court addressed the request for additional interrogatories by ordering Deportation Officer Andy Padilla to submit a declaration on his knowledge of the efforts to remove Mr. Sesay. The Court set a final status hearing for July 25, 2008. Subsequently, Dr. Lobban submitted his report and supplemental material to the Court and the parties, Officer Pitt served his answer to Mr. Sesay's interrogatories, and Officer Padilla submitted his Declaration. On July 24, 2008, Mr. Sesay delivered a copy of the Affidavit of John K. Edwards to counsel for Respondents.

## ARGUMENT

### I

### SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE

The Federal Rules of Civil Procedure apply to petitions for writ of habeas corpus to the extent they do not conflict with special habeas rules and conform to previous practice. See Fed. R. Civ. P. 81(a)(4); <u>Harvest</u>

v. Castro, ___ F.3d ___, 2008 WL 2669706, at *5 (9th Cir. 2008).  A motion for summary judgment is authorized in civil proceedings pursuant to Fed. R. Civ. P. 56, and has been applied in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80-81 (1977) (noting warden may move for summary judgment on remand of habeas appeal); Earp v. Ornoski, 431 F. 3d 1158, 1166 (9th Cir. 2005) (reviewing habeas court's grant of summary judgment for respondents).

Under Rule 56(c), summary judgment may be granted if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  This showing may be based upon the pleadings and discovery on file, as well as affidavits based on personal knowledge setting out evidence admissible at trial.  Fed. R. Civ. P. 56(c) & (e).  Summary judgment can be sought by the petitioner "at any time" over 20 days following commencement of the action.  Fed. R. Civ. P. 56(a)(1).

## II

### RESPONDENTS HAVE DEFAULTED THEIR SUSPENSION DEFENSE AND SO CANNOT, AS A MATTER OF LAW, RELY ON ALLEGED OBSTRUCTION TO JUSTIFY THE EXCESSIVE DELAY IN REMOVAL

Mr. Sesay is entitled to judgment in his favor as a matter of law, because Respondents' sole legal argument in defense to Petitioner's claim under Zadvydas is that the removal period has been suspended under 8 U.S.C. § 1231(a)(1)(C) due to non-cooperation and pursuant to Pelich.  Without the Pelich suspension argument, Respondents cannot justify the unreasonably extended delay in Sierra Leone's issuing travel documents, exceeding by over two-fold the presumptively reasonable period for removal established by the Supreme Court.  Without the suspension argument, Mr. Sesay's case falls squarely within the classic, indefinite detention scenario redressed in Zadvydas and progeny.

Respondents have defaulted on the suspension argument under § 1231(a)(1)(C), because they failed to follow their own regulations for implementing the suspension statute, which under case law is a bar to raising suspension as a defense to a Zadvydas claim.  The provisions of 8 U.S.C. § 1231(a)(1)(C) allow the 90-day

1    removal period to be extended for non-cooperation in the removal efforts. But in <u>Singh v. Gonzales</u>, 448

2    F. Supp.2d 1214 (W.D. Wash. 2006), the district court held that the Government was precluded from raising

3    the suspension provisions of § 1231 to excuse a prolonged detention, because it had failed to fulfill the

4    requirement of 8 C.F.R. § 241.4(g)(1)(ii) to serve the deportee within the removal period with notice of a

5    failure to comply.

6

7        Here, ICE failed to comply with its own regulations when it purported to extend petitioner's
         detention pursuant to INA § 241(a)(1)(C) without issuing a Notice of Failure to Comply within the
8        90-day removal period, indicating that petitioner is not in compliance and what steps he must take
         to be in compliance. Rather, respondents did not issue a Notice of Failure to Comply until January
9        21, 2005–seventeen months after the 90-day removal period expired. Although respondents issued
         a Warning for Failure to Depart in August 2003, the warning is merely a form given to every
10       detainee and provides no indication that petitioner has failed to cooperate or that the removal period
         has been extended. (Dkt. # 15 at R136). According to the Code of Federal Regulations, Notice of
11       Failure to Comply and extension of the removal period must be provided before the removal period
         expires. 8 C.F.R. § 241.4(g)(1)(ii)(requiring that ICE provide notice of failure to comply "before
12       the expiration of the removal period"); <u>see also</u> 8 C.F.R. § 241.4(g)(1)(iii)(providing that ICE shall
         advise the alien that the notice of failure to comply shall extend the removal period, "if the removal
13       period has not yet expired."). Consequently, ICE cannot rely on Section 241(a)(1)(C) to extend the
         removal period that expired seventeen months earlier.
14

15     <u>Id.</u> at 1219.

16

17       Here, Mr. Sesay's 90-day removal period started on May 10, 2007, when his order was final; it expired

18    on August 8, 2007. His custody review on August 12, 2007, provides no indication that Mr. Sesay had failed

19    to cooperate. <u>See</u> Return at 47. The mandatory "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)"

20    was not issued and served on Mr. Sesay until **December 11, 2007**, over four months after his removal period

21    had expired. <u>See</u> Return Exhibits at 49-50.[1] Accordingly, as in <u>Singh</u>, ICE was too late in serving the

22    required notice of non-compliance to insist now that § 1231(a)(1)(C) suspended the removal period. Because

23    "ICE failed to comply with its own regulations," it cannot use the suspension provisions as an excuse for not

24    obeying <u>Zadvydas</u>. <u>See</u> <u>Singh</u>, 448 F. Supp.2d at 1219; 8 C.F.R. § 241.4(g)(5)(iii).

25

26

27

28    _____

         [1] ICE did not even serve Mr. Sesay with its standard I-229 warning until after he filed his
      habeas corpus petition. <u>See</u> Return Exhibits at 59-62.

The regulations implementing § 1231(a)(1)(C) are requirements of basic due process. The suspension provisions are not punishment for misconduct, but an incentive to promote cooperation. Civil incarceration for punitive reasons raises grave constitutional concerns, as the Supreme Court noted in Zadvydas, 533 U.S. at 690. The regulations instead serve to *promote* due process of law by providing notice and opportunity. See Singh, 448 F. Supp.2d at 1218 (petitioner argued suspension without timely notice violated due process). It would be fundamentally unfair to extend civil detention on the basis of conduct deemed obstructionist by ICE, but about which the detainee is not notified and given a chance to amend. Since the disabilities of non-cooperation end with a return to compliance, 8 C.F.R. § 241.4(g)(1)(ii); Andreasyan v. Gonzales, 446 F.3d 1186, 1190 (W.D. Wash. 2006); Ford v. Quarantillo, 142 F. Supp.2d 585, 588 (D.N.J. 2001), failure to notify a detainee in a timely fashion of alleged non-cooperation defeats the purpose of the suspension provision to promote timely cooperation.

This Court has not ruled on Mr. Sesay's claim under Singh. The unavailability of the suspension defense is dispositive: Respondents' default precludes the one factual defense they raised to Mr. Sesay's Zadvydas claim.[2] Accordingly, Mr. Sesay is entitled as a matter of law to have his Petition granted.

## II
**THERE IS NO FACTUAL BASIS FOR RESPONDENTS' <u>PELICH</u> DEFENSE, BECAUSE NO COMPETENT EVIDENCE SHOWS SIERRA LEONE HAS REFUSED TRAVEL DOCUMENTS AT ALL, LET ALONE A REFUSAL ON THE BASIS OF ANY ACT OR STATEMENT OF PETITIONER**

Even if the Court does not grant summary judgment on the basis of Singh, the undisputed evidence shows that there is no factual basis for Respondents' Pelich argument. No evidence supports the claim that Sierra Leone has refused travel documents to Mr. Sesay, let alone any competent evidence to show that the

---

[2] Respondents' unclean hands argument, a broad-brush smear of Mr. Sesay, was shown in the Traverse to be inapplicable to instances of misconduct unrelated to the removal efforts at issue as a matter of law. See Traverse at 12-13. In any event, Respondents have not relied on that argument and failed to revive it in their Supplemental Return or since. It can be deemed abandoned.

reason is due to a claim of Sudanese nationality.  Because the undisputed evidence shows no basis for the essential element of Respondents' Pelich claim, it cannot support a valid defense to the Petition, and Mr. Sesay is entitled to judgment as a matter of law.

A non-cooperation claim under Pelich is predicated on a cause-and-effect connection between: (1) an act of deliberate obstruction by the detainee, and (2) the refusal of the foreign country to issue travel documents.

> Since Pelich falls within the category of non-cooperative detainee, he cannot legitimately object to his continued detention when that very detention is caused by his own conduct. Pelich could likely effectuate his own removal (and free himself from detention) by providing the Polish government with the requested information. It naturally follows that his detention is not destined to be indefinite. To the contrary, Pelich's behavior places him within that class of aliens properly detained pursuant to 8 U.S.C. § 1231(a)(1)(C).

Pelich, 329 F.3d at 1061 (footnote omitted).  In the deleted footnote, the Court of Appeals stated that if Mr. Pelich ceased his obstruction, and the Polish government still did not approve removal, he would not be subject to sanctions.  See id. n.3.  Likewise, if the lack of removal were due to unreasonable demands by ICE, such as "forc[ing] him to include information he maintains is false," then suspension does not apply.  Id.  Also logically included in this causal nexus would be cases where the alleged acts of obstruction have had no effect on the removal efforts, because the foreign country is refusing for some unrelated reason, not because of acts by the detainee.[3]  In sum, if there is no cause-and-effect relation between the alleged acts of obstruction and a refusal to accept the deportee, Pelich does not apply.

The undisputed evidence in this case indicates that: (1) Sierra Leone has not refused to accept Mr. Sesay, but is simply taking inordinate time to process ICE's request; and (2) even if there were evidence showing

---

[3] Similarly, in Mau v. Chertoff, 549 F. Supp.2d 1247, 1252 n.1 (S.D. Cal. 2008), Judge Gonzalez found the Pelich claim there a "red herring," because the failure to remove was not caused by the petitioner's refusal to fill in forms, but by the judicial stay of removal in effect. Without a cause-and-effect connection between the petitioner's acts and the failure to remove, no obstruction defense lies.

a refusal, no competent evidence shows that it is based on Petitioner's claim of Sudanese nationality. Because the fundamental elements of a <u>Pelich</u> sanction are utterly lacking, there is no defense as a matter of law to the <u>Zadvydas</u> claim.

Respondents base their argument that Mr. Sesay has obstructed his removal on a single, unsworn statement by Officer John Thomas at the end of the December 2007 custody review. <u>See</u> Return Exhibits at 57. Officer Thomas's summary states, "the Sierra Leone consulate notified ICE that a travel document could not be issued due to him claiming to be a Sudanese citizen." However, Officer Thomas's statement is contradicted by a previous section of the same custody review that details contacts with the Sierra Leone consulate. Return Exhibits at 54. Nothing in this section indicates the consulate ever made a claim that it would not issue documents and the reason being Mr. Sesay's nationality claim. Neither does the previous, August 2007 custody review show any evidence of this supposed communication from the consulate. <u>See</u> Return Exhibits at 41-50.

Likewise, the Declaration of Officer Pitt attached to Respondents' Supplemental Return says nothing to support Officer Thomas's assertion. In fact, Officer Pitt *contradicts* Officer Thomas, by declaring, "The Sierra Leone consulate has not formally denied our travel document request." Pitt Declaration at ¶ 3.

Officer Pitt's view is supported by the DACS printouts attached to the Supplemental Return: nowhere in the records between March 28, 2007 and March 31, 2008 does any comment confirm Officer Thomas's assertion. <u>See</u> Supplemental Return Exhibits at 97-105. The printouts show an initial request from Sierra Leone in May 2007, a telephone interview and follow-up call in June 2007, then additional messages left with the consulate in July, August, and October 2007 and two in March 2008. <u>See</u> <u>id.</u> When ICE was actually successful in contacting the consulate, the recorded response was never "We refuse, because he claims to be from Sudan," but that the consulate is still processing and investigating the case. <u>See</u> <u>id.</u> at 99, comment for August 31, 2007; <u>id.</u> at 100, comment for September 6, 2007; <u>id.</u> at 105, comment for March 17, 2008. If

Mr. Sesay's Sudanese claim had truly stymied the effort to convince Sierra Leone to accept him, the consulate would not have made repeated claims to be reviewing the case further. Most telling of all is the DACS comment that the Sierra Leone consul did not even believe Mr. Sesay's claim to be from the Sudan. See id. at 97, comment for June 25, 2007 ("consul Mesali not convinced that subj is fr Sudan as claimed").

The exhibits previously proffered by Respondents show that there is no causal nexus between the claim of Sudanese nationality and the lack of travel documents. Now the statements provided by Officers Pitt and Padilla confirm this in a form suitable for supporting summary judgment under Fed. R. Civ. P. 56(e). See Exhibits A and B attached hereto. Exhibit A is Officer Pitt's answers under oath to Mr. Sesay's interrogatories. His responses indicate that:

(1)     Mr. Sesay provided a passport and filled in the forms necessary to request travel documents. [Response to Interrogatory 1(a)]

(2)     ICE had to send the request packet to the consulate twice–no explanation why. [Id.]

(3)     Officer Pitt has no personal knowledge of the consulate's statements regarding Mr. Sesay's nationality, but the official notes kept by ICE on the case show the consul stated he did not believe Mr. Sesay was from the Sudan. [Response to Interrogatory 1(b)]

(4)     To his knowledge, the consulate has never refused to issue a travel document, but merely states that it continues to process the request. "To date, there has not been any decision from the consulate on whether a travel document will issue." [Response to Interrogatory 1(c)]

(5)     During his communications with the consulate, Officer Pitt was never given any timeframe for processing the request. The items submitted to Sierra Leone were no different from those transmitted generally to support removal requests. [Response to Interrogatory 1(d)]

Exhibit B is Officer Padilla's declaration under penalty of perjury. He states, based on personal knowledge, that:

(6)     When Mr. Sesay told the Sierra Leonean consul on the telephone he was from the Sudan, the consul "stated he did not believe that Mr. Sesay was from Sudan." [Declaration of Andy Padilla ¶ 3]

(7)     In August 2007, the consulate reported that "no decision had been issued on whether a travel document would be issued." [Declaration ¶ 4]

(8)    In September 2007, the consulate again reported "it was not ready to issue a travel document for Mr. Sesay." [Declaration ¶ 5]

The undisputed evidence of the Pitt responses and the Padilla declaration establish two crucial facts: (1) At no point have the Sierra Leonean officials refused to issue travel documents–for any reason–and the delay in receiving travel permission is due to the (unexplained) slowness in processing ICE's request; and (2) Neither officer with personal knowledge of the communications with the consulate ever heard any statement from the Sierra Leonean authorities that travel documents will not issue or were delayed because of Mr. Sesay's claiming to be from the Sudan. In fact, these documents also undisputably establish a third fact entirely contrary to Respondent's Pelich argument, namely, (3) The Sierra Leone consul did not believe the claim of Sudanese nationality.

The undisputed, competent evidence here shows that there has not even been a *refusal* by the Sierra Leone authorities, let alone one prompted by any conduct of Mr. Sesay. In fact, the undisputed evidence shows only that the consulate did not credit the Sudanese claim, so that cannot possibly be treated as a cause for the delay in issuing documents. Respondents' own evidence indicates Mr. Sesay has cooperated fully with the effort to remove him to Sierra Leone and would willing go there rather than remain in custody. See Supplemental Return Exhibits at 103 (entry for Feb. 1, 2008). The only thing he has not done is comply with the unreasonable demand that he feed the consulate false information. See Pelich, 329 F.3d at 1061 n.3 (refusal to lie on applications is not obstruction).

There is absolutely no basis in competent evidence for Respondents' Pelich claim. The undisputed evidence, in fact, shows only the opposite, that Sierra Leone is engaging in typical foot-dragging. Because there is no sustained defense to the unreasonable and prolonged delay in obtaining travel permission, Mr. Sesay is entitled to judgment in his favor as a matter of law.

/ / /

### III

**IF THE COURT FINDS THE MATTER IS NOT FULLY DISPOSED OF BY RESOLUTION OF THE ABOVE ISSUES, AN EVIDENTIARY HEARING IS REQUIRED, BECAUSE OF SUBSTANTIAL DISPUTES ABOUT THE EXPERT'S FINDINGS AND THE NEED FOR THIS COURT TO ASSESS PETITIONER'S CREDIBILITY DIRECTLY**

Mr. Sesay contends that the lack of a valid, sustained response to the undisputed evidence supporting his Zadvydas claim of prolonged detention with no significant likelihood of removal in the reasonably foreseeable future means he is entitled to judgment as a matter of law. However, if this Court does not find this issue dispositive of the Petition, he moves the Court to enter an order of summary adjudication on the Pelich issue, for the reasons outlined above.

If the Court finds the matter not disposed of after summary adjudication, Mr. Sesay urges the Court to continue in its decision to schedule an evidentiary hearing on nationality. Mr. Sesay contends that an evidentiary hearing on nationality is still necessary for the following reasons:

**(1)** Mr. Sesay disputes many portions of the expert's report. He intends to raise objections both to the substantive conclusions and to the methodology, which does not comport with accepted practice in the relevant field of expertise. See Fed. R. Evid. 702 & 703; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). For instance, Mr. Sesay contends the expert has employed novel, unapproved, and *ad hoc* methods during his interview of Petitioner; omitted crucial information; relied on discredited physical stereotypes; utilized unsupported assumptions and unreliable sources; unreasonably downplayed the effects of linguistic and cultural attrition from age, deliberate efforts of deracination, and the trauma of his loss of family and enslavement; and engaged in acts of baseless speculation. In the end, the expert's flawed conclusions provide no firm answers, only certain probabilities based on generic, *a priori* expectations.

**(2)** The evidence and argument in this case have reduced the nationality issue to two relevant possibilities: Mr. Sesay is either from Sierra Leone or the Sudan. Respondents' Pelich argument stands up

07CV2354-JM (LSP)

only if Mr. Sesay is from Sierra Leone, and his claim to be from somewhere else wrongfully impedes the removal effort. Cf. Pelich, 329 F.3d at 1061 (INS justified to disbelieve claims to German nationality contradicted by evidence of Polish nationality). But if the lack of travel documents is due to ICE's *own incorrect insistence* that Mr. Sesay is from Sierra Leone, despite his consistent denials, the lack of progress in removal to Sierra Leone is no fault of Mr. Sesay's. The critical question here is whether he is Sierra Leonean. If he is not, nothing he has done has impeded the instant removal efforts, which are single-mindedly focused on Sierra Leone.

Thus, regardless of the value of the expert's conclusions on Sudanese origin, if Mr. Sesay is not Sierra Leonean, no obstruction has occurred. In that light, an evidentiary hearing is still required, since the expert's conclusions do not competently decide the central issue here, which remains highly disputed. While Respondents continue to insist on little more than a non-authenticated photocopy of the forged Sierra Leone passport to prove Mr. Sesay is from that country, Petitioner offers competent evidence flatly contradicting that assertion.

In Exhibit C attached hereto, the affidavit of John K. Edwards, who befriended and assisted Mr. Sesay after the latter escaped from his slave master, confirms: (1) Petitioner's assertion of his true name and history over 20 years ago, long before any incentive arose to fabricate an alternate, Sudanese origin to obfuscate the removal efforts; (2) specific details of Mr. Sesay's post-escape history; (3) that Respondents' claim of numerous blood relations of Mr. Sesay in the Maryland-D.C. area is false (Supplemental Return at 3); (4) that Respondents' assertion is false that Mr. Edwards refused to talk to their investigators, as counsel complained to this Court at the July 7 status hearing; and (5) that Mr. Sesay is not from Sierra Leone, which is Mr. Edwards's native country.

Whether or not the expert's probabilistic conclusions that Mr. Sesay is not Sudanese are accepted, the proof that Mr. Sesay is instead from Sierra Leone–the only material alternative–is highly disputed, and a

hearing is still needed to resolve this aspect of the nationality question, assuming determination of actual nationality is still necessary and dispositive.

(3) Ultimately, the nationality issue comes down to a basic question of whether Mr. Sesay's account of his origins is credible. Definitive, objective evidence is unlikely to be adduced. The expert's conclusions are at best indicative. In the end, this Court can decide this issue only through an evaluation of Mr. Sesay's personal credibility by observing him testifying under oath. An evidentiary hearing is still critical to resolution of this case, because this Court cannot pass on the merits of the conflicting nationality claims without seeing and hearing Mr. Sesay relate his account and explain the seeming anomalies. Live testimony is indispensable to this Court's task of assessing Petitioner's veracity and sincerity.

### CONCLUSION

For the above reasons, the Court should grant the motion for summary judgment. If the motion is denied, the Court should nonetheless grant summary adjudication of the Pelich claim and order a full evidentiary hearing to address the remaining issue of actual nationality.

Respectfully submitted,

Dated: July 25, 2008

_s/ James Fife_
**JAMES FIFE**
**Federal Defenders of San Diego, Inc.**
Attorneys for Petitioner SESAY
james_fife@fd.org

12                                    07CV2354-JM (LSP)

# EXHIBIT LIST

Exhibit A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-6
Respondent's Response to Petitioner's Interrogatories

Exhibit B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8
Declaration of Andy Padilla

Exhibit C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11
Affidavit of John K. Edwards

Exhibit A



1  KAREN P. HEWITT
   United States Attorney
2  SAMUEL W. BETTWY
   Assistant U.S. Attorney
   California State Bar No. 094918
3  CAROLINE CLARK
   Assistant U.S. Attorney
4  California State Bar No. 220000
   RAVEN M. NORRIS
5  Assistant U.S. Attorney
   California State Bar No. 232868
6  U.S. Attorney's Office
   Federal Office Building
7  880 Front Street, Room 6293
   San Diego, California 92101-8893
8  Telephone: (619) 557-7119 / 7491 / 7157
   Facsimile:  (619) 557-5004
9
10 Attorneys for Respondents

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13 IDRISA SESAY,                      ))  Case No. 07cv2354-JM (LSP)
                                      ))
14              Petitioner,           ))  RESPONDENT=S RESPONSE TO
                                      ))  PETITIONER=S INTERROGATORIES
15      v.                            ))
                                      ))
16 MICHAEL CHERTOFF, ET AL.,

17              Respondents.

18 _____

19 PROPOUNDING PARTY:    Petitioner, Idrisa Sesay

20 RESPONDING PARTY:     Respondents, Michael Chertoff, et al.

21 SET:                  ONE (1-3)

22

23      Respondent hereby responds to Petitioner_s Interrogatories, pursuant to Federal Rule of Civil

24 Procedure 33, as follows:

25              PRELIMINARY STATEMENT

26      These responses are made solely for the purpose of and in relation to this action.  Each response

27 given is subject to all appropriate objections (including, but not limited to, objections concerning

28

1

1  relevancy, competency, hearsay, materiality, authenticity, propriety, admissibility and privilege) which

2  would require the exclusion of such responses, if offered in evidence at trial. All such objections and

3  grounds therefore are reserved and may be asserted at trial. The responses herein shall not be construed

4  as a waiver of such objections or of any defense to this action.

5      Respondent has not completed its investigation of the facts underlying this case, has not

6  completed its discovery, has not completed its investigation of the damages alleged by Petitioner, and

7  has not completed its preparation for trial. All answers herein are based only upon the information that

8  presently is available to and known by Respondent. It is anticipated that further discovery, independent

9  investigation, legal research, and legal analysis will supply additional facts, add meaning to known facts,

10  establish entirely new factual conclusions and legal contentions, and lead to the discovery of additional

11  documents or items, all of which may lead to additions to, changes in and variations from the answers set

12  forth herein. Accordingly, these responses are provided without prejudice to Respondent's right to

13  furnish other or different responses, based upon information that is subsequently discovered, compiled or

14  analyzed.

15      Except for facts explicitly admitted herein, no admission of any nature whatsoever is to be

16  implied or inferred. The fact that the Petitioner=s First Set of Interrogatories has been responded to

17  should not be taken as an admission or a concession of the existence of any facts set forth or assumed by

18  such a request, or that such answer constitutes evidence of any fact thus set forth or assumed.

19                    OBJECTIONS AND LIMITATIONS

20      Although Respondent will make a full disclosure of all the discoverable information as required

21  by the applicable rules, Respondent asserts the following objections and limitations and they will be

22  incorporated into and cited by number in the request responses below..

23      1.    The request seeks information about documents protected by the attorney-client privilege

24              or attorney work-product doctrine.

25

26      2.    The request seeks information or documents protected from disclosure by the Privacy

27                                   2

28

1    Act.

2        3.        The request seeks irrelevant information or information not reasonably calculated to lead

3    to the discovery or admissible evidence.

4        4.        The request is vague and ambiguous.

5        5.        The request is compound, over-broad, oppressive or burdensome.

6        6.        The request lacks foundation and assumes facts not in evidence.

7        Without waiving any privileges or protections regarding the interrogatories, in the interest of

8    justice and expeditiously proceeding with this litigation, Respondent offers the following responses:

9                                REQUESTS AND RESPONSES

10    INTERROGATORY NO. 1:

11        Describe all written and oral communications involving ICE officials of the embassy or consulate

12    of Sierra Leone relating to Petitioner to Sierra Leone during the relevant time frame, including, but not

13    limited to, specifically describing all such communications relating to:

14        (a) The validity and authenticity of any identity or travel documents presented to the Sierra

15    Leone officials;

16        (b) All statements by Sierra Leone officials relating to Petitioner=s nationality;

17        (c) All statements by Sierra Leone officials relating to their willingness to provide travel

18    permission for Petitioner to be removed to Sierra Leone; and

19        (d) All statements by Sierra Leone officials relating to the projected time frame and the steps or

20    supporting materials required for processing ICE=s request to remove Petitioner to Sierra Leone.

21        RESPONSE TO INTERROGATORY NO. 1:

22        (a) On February 20, 2008, I sent a travel document request to the Sierra Leone consulate for

23    Idrisa Sesay.  The request package contained the following forms and documents:

24            Form (I-213) Record of Deportable Alien

25            Form (I-217) Information for Travel Document

26            Copy of Expired Passport from Republic of Sierra Leone

27                                3

28

1          Form (862) Notice to Appear

2          Abstract of Judgment ordering Sesay Removed

3    My review of the A-file indicates that at least one additional travel document request package was sent

4    to the Sierra Leone consulate by Officer Padilla.  I cannot speak to the validity and authenticity of the

5    passport, which was the identity document provided.  The passport was provided by Idrisa Sesay.  The

6    Form I-217 information for travel document request was completed by Idrisa Sesay, but I cannot speak to

7    the validity and authenticity of the information provided by Mr. Sesay.  Both the Form I-213 and Form

8    862 were copies of original documents that were produced by ICE when removal proceedings were

9    initiated against Mr. Sesay, and the abstract of judgment was a copy of the final removal order issued

10   against Mr. Sesay.

11          (b)     I do not personally know of any statements made by the consulate with regard to Mr.

12   Sesay=s nationality.  Upon review of the A-file, notes by Officer Padilla indicate that on June 13, 2007,

13   Mr. Sesay was interviewed via telecom by Consul Mesali and that Mr. Sesay  informed the consul that

14   his was from Sudan not Sierra Leone.  According to Officer Padilla=s notes, Consul Mesali did not

15   believe that Mr. Sesay was from Sudan.  Further notes indicate that on June 25, 2007, Consul states that

16   he does not believe subject is a Sudan citizen.

17          (c)     To my knowledge, the consulate has not given any indication with regard to whether or

18   not a travel document will be issued.  The consulate has merely confirmed that they received the request

19   and are in the process of confirming whether or not Mr. Sesay is a citizen of Sierra Leone.  My review of

20   the A-file indicates that on August 31, 2007, Officer Padilla contacted Consul Marjorie, who stated that

21   Consul Mesali has not updated subject=s file regarding issuance of a travel document and no decision

22   had been issued on whether a travel document would be issued.  On September 6, 2007, I again

23   contacted the Consulate, and Consul Mesali stated that a decision had not been made on whether the

24   Consulate would issue a travel document.  On March 17, 2008, I contacted the consulate and Consul

25   Sheku stated that a travel document not ready, but stated that he will review case and call back.  To date,

26   there has not been any decision from the consulate on whether a travel document will issue.

27

28

4

4

1     (d)     During my communications with the Sierra Leone Consulate, the officials did not give

2 any projected timeframe for processing ICE=s request to remove Mr. Sesay to Sierra Leone. The only

3 supporting materials that were submitted were those in the travel document request described above in

4 interrogatory 1(a). To my knowledge, these are the supporting materials generally required by the

5 consulate. Pursuant to ICE standard procedure, ICE contacts the consulate periodically to check the

6 status of the travel document request. ICE continues to contact the consulate until a decision is issued.

7 **INTERROGATORY NO. 2:**

8     Describe all written and oral communications involving ICE and officials of the embassy or

9 consulate of Sudan relating to Petitioner during the relevant time frame, including, but not limited to,

10 specifically describing all such communications relating to:

11     (a) Petitioner=s nationality; and

12     (b) Sudan=s requirements for issuing travel permission for removal to Sudan.

13     <u>RESPONSE TO INTERROGATORY NO. 2:</u>

14     (a) On February 20, 2008, I sent a travel document request to the Consulate of Sudan. The travel

15 document request included:

16     Form (I-213) Record of Deportable/Inadmissible Alien

17     Form (I-862) Notice to Appear, copy of Removal Order

18     a copy of expired Passport issued by the Republic of Sierra Leone;

19     Abstract of Judgment ordering Sesay Removed

20 I did not receive any oral communication from the Consulate of Sudan with regard to Mr. Sesay=s

21 nationality, and I do not know if any oral communication was made to any other ICE official. On March

22 3, 2008, I received a letter from the Embassy of Sudan denying issuance of a travel document and

23 stating that Mr. Sesay was not a citizen of Sudan.

24     (b) Generally, a Consulate requires some proof of citizenship in the form of either a passport,

25 birth certificate or some other documentation of citizenship before issuing a travel document to permit

26 removal. I am not familiar with the Consulate of Sudan=s specific requirements for issuing travel

27

28

1    permission for removal.

2    <u>INTERROGATORY NO. 3</u>:

3        Describe all documents provided by ICE to the embassy or consulate of Sierra Leone relating to

4    ICE=s efforts to remove Petitioner to Sierra Leone.

5        <u>RESPONSE TO INTERROGATORY NO. 3</u>:

6        See Answer to Interrogatory No. 1(a).

7

8        I declare under penalty of perjury that the foregoing statements made by me in response to

9    Interrogatories 1 through 3 are true and correct to the best of my knowledge and belief.

10

11   Dated: 7/10/    , 2008

     William Pitt

12   Supervisory Immigration Enforcement Agent
     Immigration and Customs Enforcement

13   San Diego Field Office

14   Subject to the objections interposed above:

15

16

17   AUSA Samuel W. Bettwy
     Ausa Raven M. Norris for San Bettwy

18

19

20

21

22

23

24

25

26

27

28

                                    6

Exhibit B

1        UNITED STATES DISTRICT COURT

2      FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3
IDRISA SESAY,                    )    Case No. 07cv2354 JM (LSP)
4   [A77 062 688]                    )
                                     )
5              Petitioner,           )
                                     )
6      v.                            )
                                     )    DECLARATION
7   MICHAEL CHERTOFF, Secretary of   )    OF ANDY PADILLA
    the Department of Homeland Security, et )
8   al.,                             )
                                     )
9              Respondents.          )
                                     )
10  _____

11
        I, ANDY PADILLA, Deportation Officer of the U.S. Immigration and Customs Enforcement in
12
    San Diego, declare and state as follows:
13
        1.    I am a Deportation Officer, formerly assigned to manage the custody docket of Idrisa
14
    Sesay, docket number A77 062 688.
15
        2.    I have been asked to provide this Declaration concerning what I know, from personal
16
    knowledge, about the content of conversations with the Sierra Leone Consulate about the case of Idrisa
17
    Sesay.  I have reviewed the computer database to refresh my memory.  This Declaration contains
18
    information from both my independent recollection and from the database.
19
        3.    On June 13, 2007, Mr. Sesay was interviewed by telephone by Consular Officer Mesali of
20
    the Sierra Leone Consulate.  During that conversation, Mr. Sesay informed Consular Officer Mesali that
21
    he was from Sudan and not from Sierra Leone.  Consular Officer Mesali stated that he did not believe
22
    that Mr. Sesay was from Sudan.
23
        4.    On August 31, 2007, I contacted Consular Officer Marjorie of the Sierra Leone Consulate.
24
    She stated that Consular Officer Mesali had not updated Sesay=s file regarding the issuance of a travel
25
    document and that no decision had been issued on whether a travel document would be issued.  Consular
26
    Officer Marjorie stated that she would call on September 5, 2007, to provide an update.
27
                                    1
28

07cv2354 JM

7

1    5.    On September 6, 2007, Consular Officer Mesali stated that he was not yet ready to issue a

2    travel document for Mr. Sesay.

3    6.    I never heard anyone from the Sierra Leone Consulate ever comment on the authenticity

4    of Mr. Sesay=s Sierra Leone passport a photocopy of which was provided by Mr. Sesay.

5    I make this declaration under penalty of perjury under the laws of the United States of America.

6    DATED:  7/10/2008

7.                                              ANDY PADILLA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        2

Exhibit C

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JEFFREY T. MILLER)

**IDRISA SESAY,**

                    **Petitioner,**

      v.

**MICHAEL CHERTOFF, et al.,**

                  **Respondents.**

Case No. 07CV2354-JM (LSP)

**AFFIDAVIT OF JOHN K. EDWARDS**

I, John K. Edwards, state:

1.    I am an acquaintance of the Petitioner in the above-captioned action. If called to testify, I would be a competent witness to the facts attested to below.

2.    I live at 6735 New Hampshire, Apartment 304, Takoma Park, Maryland.

3.    I have known Petitioner since the mid-1980s. I know him by the name Jabbar, and the name "Idrisa Sesay" was a fake name he used to get out of Africa. Jabbar lived in the apartment below mine with a man named Robinson. I first saw Jabbar in the 1980s as a teenager in the apartment lobby on my way to work as he was waiting to go to school. Afterwards, he would come to my

**9**

apartment on weekends to visit with my children and to have dinner with us.

4.    After Mr. Robinson died, I tried to help out Jabbar, and he would sleep over in my apartment sometimes.

5.    To help Jabbar attend high school, I claimed to be his cousin to act as his new guardian so he could attend school.  However, I am not related to Jabbar.  I also took Jabbar to church with me. I believe we went to St. Matthew's, but I am not sure.

6.    The reason I helped Jabbar was because of his tragic life.  He told me that he was from Sudan and that his family was killed in a war there.  He told me he had worked as a slave for a family , but I do not know for how long or where.  He escaped from the family, but again I do not where that happened.  I do not remember the name of the family.

7.    I am a native of Freetown, Sierra Leone, where I lived for 25 years.  I came to the United States 33 years ago and became a U.S. citizen about 15 or 20 years ago.

8.    I do not believe that Jabbar is from Sierra Leone.  He claimed to be from Sudan, and he did not have a Sierra Leonean accent.  Also, I never saw him associate with any acquaintances from Sierra Leone.

9.    I have not spoken with Jabbar in the past few years.

/ / /

/ / /

/ / /

10.    In June 2008, government agents came to my house and asked me about Jabbar. They also showed me recent pictures, and I identified them as being of Jabbar, though he looked different than he did 20 years ago. I told the agents Jabbar was not from Sierra Leone.

Date: 7/18/08

**JOHN K. EDWARDS**
Affiant

STATE OF MARYLAND
COUNTY OF _____ Howard _____, to wit:

I hereby certify that on the _18th_ day of _July_, 2008, before me, the subscriber, a notary public of the State of Maryland, in and for _Howard county_, personally appeared John K. Edwards and made oath or affirmation in due form of law that the matters and facts set forth in the Affidavit of John K. Edwards are true.

As witness, my hand and notarial seal.

_____
Notary Public

My Commission expires _7/12/2009_

[SEAL]