1 | **JAMES FIFE**
California State Bar No. 237620
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, California 92101-5030
Telephone No. (619) 234-8467
4 | Email: james_fife@fd.org

5 | Attorneys for Petitioner

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | **(HONORABLE JEFFREY T. MILLER)**

11 | **IDRISA SESAY,**

Case No. 07CV2354-JM (LSP)

12 | Petitioner,

DATE: September 19, 2008

13 | v.

TIME: 1:30 p.m.

14 | **PETITIONER'S REPLY TO**

15 | **MICHAEL CHERTOFF, et al.,**

**OPPOSITION TO MOTION FOR**
**SUMMARY JUDGMENT AND**

16 | Respondents.

**RESPONSE TO CROSS-MOTION**

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................. ii

I       LEGAL PARAMETERS FOR SUMMARY JUDGMENT ............................ 1

II      RESPONDENTS, MISCONSTRUING THE BURDEN, FAIL TO SHOW A GENUINE
        DISPUTE AS TO AN ESSENTIAL ELEMENT FOR THEIR PELICH DEFENSE. ......... 3

        A.  The Burden Is on Respondents to Show Non-Cooperation. ........................ 3

        B.  The Record Establishes Petitioner Is Entitled to *Zadvydas* Relief. ................... 5

        C.  Respondents Fail to Show They Have a Viable Defense to the *Zadvydas* Claim. ........ 6

III     RESPONDENTS FAIL TO REFUTE THE ARGUMENT THAT THEY HAVE
        PROCEDURALLY DEFAULTED ON THEIR SUSPENSION DEFENSE. .............. 9

CONCLUSION ......................................................... 15

APPENDIX

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Adickes v. S.H. Kress & Co.,
  398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,8,15

Arevalo v. Ashcroft,
  344 F.3d 1 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Balogun v. INS,
  9 F.3d 347 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

British Airways Board v. Boeing Co.,
  585 F.2d 946 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,7,8

Bushie v. Stenocord Corp.,
  460 F.2d 116 (9th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,7

Casas-Castrillon v. DHS,
  535 F.3d 942, 2008 WL 2902026 (9th Cir. 2008) . . . . . . . . . . . . . . . . 13

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5,7,15

Clark v. Martinez,
  543 U.S. 371 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Demore v. Kim,
  538 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Dixon v. United States,
  548 U.S. 1 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
  304 F.3d 829 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lema v. INS,
  341 F.3d 853 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,10,11

Mau v. Chertoff,
  549 F. Supp. 2d 1247, 1252 n.1 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . 7

Molski v. Foley Estates Vineyard and Winery, LLC,
  531 F.3d 1043 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Powell v. Ashcroft,
  194 F. Supp. 2d 209 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 7

Pelich v. INS,
  329 F.3d 1057 (9th Cir. 2003) . . . . . . . . . . . . . . . . . 4,5,6,7,8,10,11,15

Sango-Dema v. District Director,
  122 F. Supp. 2d 213 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 8

Seretse-Khama v. Ashcroft,
  215 F. Supp. 2d 37 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Singh v. Gonzales,
  448 F. Supp.2d 1214 (W.D. Wash. 2006) . . . . . . . . . . . . . . . . . . . . . 9

Zadvydas v. Davis,
  533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . 4,5,6,8,9,10,11,15

## DOCKETED CASES

Anestor v. Chertoff,
  No. 06CV2170-BEN (JMA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Doissaint v. Chertoff,
  No. C08-0584-MJP, 2008 WL 3978559 (W.D. Wash. Aug. 26, 2008) . . . . . . . 12

Singh v. Gonzales,
  No. 03-72471 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1  **JAMES FIFE**
   California State Bar No. 237620
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5030
   Telephone No. (619) 234-8467
4  Email: james_fife@fd.org

5  Attorneys for Petitioner

6

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10               **(HONORABLE  JEFFREY T. MILLER)**

11  **IDRISA SESAY,**                    Case No.  07CV2354-JM (LSP)

12                    **Petitioner,**      DATE: September 19, 2008
                                          TIME: 1:30 p.m.
13        **v.**

14                                        **PETITIONER'S REPLY TO**
                                          **OPPOSITION TO MOTION FOR**
15  **MICHAEL CHERTOFF, et al.,**         **SUMMARY JUDGMENT AND**
                                          **RESPONSE TO CROSS-MOTION**
16                    **Respondents.**

17

18                                  I

19
    **LEGAL PARAMETERS FOR SUMMARY JUDGMENT**
20
21      Summary judgment is appropriate when "there is no genuine issue of material fact and the movant is

22  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Specifically, if the movant shows without

23  a genuine dispute that he (1) has a right to the requested relief, and (2) the evidence for any asserted defense

24  is insufficient, he is entitled to a ruling in his favor.  See 10B Charles Wright et al., Federal Practice and

25  Procedure § 2734 (3d ed. 1998).  Thus, one avenue for winning a summary judgment is to show that the

26
27  opponent's affirmative defense is deficient.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  That

28  is because, by nature, a fact is material if necessary to establish an affirmative defense.  See 10A Charles

1   Wright et al., <u>Federal Practice and Procedure</u> § 2725 (3d ed. 1998).  For example, in <u>Adickes v. S.H. Kress</u>

2   <u>& Co.</u>, 398 U.S. 144, 160 (1970), a civil rights claim involving an alleged conspiracy between police and the

3   defendants to bar African-Americans from use of a lunch counter, the defendant sought summary judgment

4   on the basis of an affidavit from a store manager that there had been no communication between store

5   personnel and the police.  However, the Supreme Court overruled the district court's grant of summary

6   judgment. Review of the record indicated that the defendants had not sustained their burden to establish their

7   defense as a matter of law, as the manager's affidavit did not suffice to show lack of communication, and

8   there were no affidavits from the food service personnel directly involved or from the police officers.  <u>See</u>

9   <u>id.</u> at 157-59.  Because this affirmative defense had been insufficiently supported, the grant of summary

10  judgment was improper.  <u>See id.</u> at 158 ("Given these unexplained gaps in the materials submitted by

11  respondent, we conclude that respondent failed to fulfill its initial burden of demonstrating what is a critical

12  element in this aspect of the case—that there was no policeman in the store.").

13      The movant should be granted judgment if his showing is dispositive, even if other, non-material issues

14  remain in dispute.  <u>See</u> 10A Wright, <u>supra</u> § 2727 ("Indeed, applying this principle, even if the movant's own

15  evidentiary material creates an issue of credibility, summary judgment may still be warranted if it also

16  appears that the party opposing the motion cannot prevail in any event so that the issue of credibility is

17  immaterial.") (footnotes omitted).

18      The salutary role of summary judgment in weeding out insubstantial claims is served only when a side

19  is held to the requirement that it adduce all the evidence necessary to sustain its burden at the time of the

20  motion, as in <u>Adickes</u>.  Although a party may claim—by affidavit showing specific reasons—that it was

21  precluded from presenting essential evidence in support of its position, <u>see</u> Fed. R. Civ. P. 56(f), the general

22  principle of summary judgment is that a party cannot hold evidence in reserve and must place its cards on

23  the table, under threat of an adverse ruling.  <u>See, e.g., Adickes</u>, 398 U.S. at 160-61 (noting the peril to parties

failing to support fully their positions on summary judgment). As indicated in 10A Wright et al., supra, § 2727, "The nonmovant is not entitled to a trial on the basis of a hope that he can produce some evidence at that time." (footnote omitted).

Thus, the nonmovant must show a plausible factual ground for his defense. Showing the facts are in dispute does not suffice, if there is no legally viable theory based on those facts. See Bushie v. Stenocord Corp., 460 F.2d 116, 118-19 (9th Cir. 1972). Accordingly, "[e]vidence in opposition to the motion that clearly is without any force is insufficient to raise a genuine issue." 10A Wright, supra, § 2727 (footnote omitted). For example, in British Airways Board v. Boeing Co., 585 F.2d 946, 951-52 (9th Cir. 1978), testimony that a crack in a terminal fitting on an airplane would have catastrophic results did not defeat a summary judgment motion, absent any evidence that such a crack had a causal connection to the accident in question. Argument of counsel was not evidence and cannot create a factual dispute where none otherwise exists. See id. at 952.

Finally, it should be noted that not all evidence is suitable for use in a summary judgment motion, even if it may be admissible at trial. "For example, because opinion testimony always is subject to evaluation by the fact finder, it generally has been held not an appropriate basis for summary judgment." 10B Wright et al., supra, § 2738.

II

**RESPONDENTS, MISCONSTRUING THE BURDEN, FAIL TO SHOW A GENUINE DISPUTE AS TO AN ESSENTIAL ELEMENT FOR THEIR PELICH DEFENSE.**

**A. The Burden Is on Respondents to Show Non-Cooperation.**

Respondents make the repeated, erroneous assertion that because Mr. Sesay bears the ultimate burden on his Petition, and he has allegedly not proved he is from the Sudan, they are entitled to summary judgment. See Cross-Motion at 5-7. In making this claim, Respondents improperly telescope the evidence and

1    arguments in this case, distorting the facts at issue and the legal standards applicable to them.

2        Respondents start down the wrong track by inferring that as part of his initial burden on the Petition,

3    Mr. Sesay was obliged to prove his cooperation in the removal efforts. See Cross-Motion at 5 (citing Lema

4    v. INS, 341 F.3d 853 (9th Cir. 2003)). However, Respondents mischaracterize the Lema and Pelich v. INS,

5

6    329 F.3d 1057 (9th Cir. 2003), reasoning as if it were an element of a Zadvydas v. Davis, 533 U.S. 678

7    (2001), claim, which it is not. Zadvydas nowhere listed cooperation as a prerequisite for release from

8    unreasonable detention, which held simply "that, once removal is no longer reasonably foreseeable, continued

9
     detention is no longer authorized by statute." 533 U.S. at 699. In fact, the prospect of using deliberate
10
     obstruction to obtain release was expressly raised by Justice Kennedy in his dissent, but was obviously not
11

12   adopted by the majority. See id. at 713 (Kennedy, J., dissenting). Nor did either Pelich or Lema purport to

13   find any such language in Zadvydas. Rather, Lema straightforwardly acknowledges that continued detention

14
     due to suspension under 8 U.S.C. § 1231(a)(1)(C) was authorized "notwithstanding Zadvydas." 341 F.3d
15

16   at 856 (characterizing the reasoning of Pelich).

17       It is clear that cooperation *vel non* is not an element of a petitioner's Zadvydas claim, but is in the nature

18   of an affirmative defense to an otherwise unreasonable detention. Mr. Sesay is aware of no court which has

19
     denied Zadvydas relief, solely because the petitioner failed to prove his cooperation independently of a
20

21   Government counter-allegation of non-cooperation. In general, the burden of proof for facts "peculiarly in

22   the knowledge of a party" lies with that party. Dixon v. United States, 548 U.S. 1, 9 (2006) (citation

23   omitted); cf. Molski v. Foley Estates Vineyard and Winery, LLC, 531 F.3d 1043, 1048 (9th Cir. 2008) ("By

24
     placing the burden of production on the defendant, we place the burden on the party with the best access to
25
     information regarding the historical significance of the building."). ICE is certainly in the best position to
26

27   know when a detainee has failed to cooperate as required under the regulations; the very existence of specific

28   ICE forms (Warning for Failure to Depart (I-229), Notice of Failure to Comply) which inform deportees of

1  deficient cooperation attests to this fact.

2    Because a <u>Pelich</u> argument is an affirmative defense to Mr. Sesay's <u>Zadvydas</u> claim, he has no burden

3  to show cooperation to prevail on summary judgment. <u>See</u> <u>Celotex</u>,477 U.S. at 323 ("we find no express or

4

5  implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar

6  materials *negating* the opponent's claim."). Likewise, "[i]nstead, as we have explained, the burden on the

7  moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an

8  absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325. On the other hand, actually showing

9

10  no material evidence supports the asserted defense merits summary judgment: "In our view, the plain

11  language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

12  motion, against a party who fails to make a showing sufficient to establish the existence of an element

13  essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322.

14  **B.  <u>The Record Establishes Petitioner Is Entitled to <em>Zadvydas</em> Relief.</u>**

15

16    Here, Respondents never dispute the essential elements of Mr. Sesay's <u>Zadvydas</u> claim. <u>See</u> Traverse

17  at 13-15; Petitioner's Court-Ordered Supplemental Briefing at 10-11. That is: (1) It is undisputed and

18  undisputable that Mr. Sesay has been held in excess of the reasonable period to effect removal established

19  in <u>Zadvydas</u>; indeed, his detention following a final removal order is nearly **thrice the <u>Zadvydas</u> period**.

20

21  (2) It is undisputed and undisputable that Sierra Leone has not produced travel documents for Mr. Sesay after

22  more than 16 months of ICE efforts. (3) There is nothing in the record, even in Respondents' latest pleading,

23  <u>see</u> Cross-Motion at 4, to indicate *when* travel documents will be provided. <u>See also</u> Pitt Response to

24  Interrogatories at 5 (Response (d) to Interrogatory 1) ("During my communications with the Sierra Leone

25  Consulate, the officials did not give any projected timeframe for processing ICE's request to remove Mr.

26

27  Sesay to Sierra Leone."). As Sierra Leone has given no timetable for when those documents will be

28  produced, or explained why it has required nearly a year and half to process ICE's repeated requests, or

indicated what is required to complete the process, there is good reason to believe that removal is not significantly likely in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701; see also Order Granting Petition for Writ of Habeas Corpus, Anestor v. Chertoff, No. 06CV2170-BEN (JMA) (S.D. Cal. Aug. 27, 2007) (petition granted when Bahamas refused repatriation, and no timetable existed for amending removal order to add Haiti as alternate destination).  Because there is no genuine issue that Mr. Sesay has been detained in excess of the presumptively reasonable period and that good reason exists to believe in no significant likelihood of removal in the reasonably foreseeable future, Mr. Sesay has shown that he is entitled to relief under Zadvydas as a matter of law.

**C. Respondents Fail to Show They Have a Viable Defense to the _Zadvydas_ Claim.**

As the Supreme Court indicated in Zadvydas, the burden now shifts to Respondents to show removal _is_ imminent or some other defense, such as suspension under 8 U.S.C. § 1231(a)(1)(C).  However, Respondents not only fail to support their Pelich argument, they positively contradict it by conceding that "[t]he Sierra Leone consulate has not formally denied DHS's request for a travel document."  Cross-Motion at 4; see also id. at 1, 8 n.6.  Respondents' assertion is supported by admissible evidence, including Officer Pitt's Declaration attached to the Supplemental Return, Officer Pitt's Responses to Interrogatories attached to the Motion for Summary Judgment, and Officer Padilla's Declaration attached to the Motion for Summary Judgment.

What Respondents never address is that these three _sworn_ statements flatly contradict the one unsworn statement of Officer Thomas, upon which Respondents have always relied and continue to rely.  See Cross-Motion at 4, 8.  Officer Thomas's statement that the Sierra Leone consulate "notified ICE that a travel document would not be issued" due to the claim of Sudanese nationality is diametrically opposed by the admissible evidence in the record, Respondents' repeated concessions, and the absence of any support in the associated custody reports or telephone contact records with the consulate.  See Motion for Summary

Judgment at 7-9. Even the "Notice for Failure to Comply Pursuant to 8 CFR 241.4(g)," served in December 2007, does not mention refusal due to Sudanese nationality as the basis for the claim of non-cooperation, but only asserts that "you have failed to provide the Sierra Leone Consulate the information necessary for the issuance of a travel document." Return Exhibits at 49. In fact, the *only* mention of Sudanese nationality in the admissible evidence, in Officer Padilla's sworn Declaration, indicates that the consul **did not believe the claim of Sudanese nationality**. As a result, the evidence is overwhelming that **Sierra Leone *has not refused* travel documents for any reason**, despite Officer Thomas's assertion otherwise, and the same evidence overwhelmingly shows that **the consul did *not believe* Mr. Sesay was from Sudan**. The admissible evidence is rock-solid that the lack of travel documents is not due to a claim of Sudanese nationality. The essential element for the Pelich defense is missing, and so summary judgment is warranted. See Celotex, 477 U.S. at 322-23.

Respondents' pointing to an alleged falsehood concerning Sudanese nationality (or any of the other, pre-removal acts they list) has no materiality whatever to this case, since nothing shows that that fact bears any causal relationship to the lack of progress on removal. Their claim is precisely analogous to the evidence of a component crack in British Airways: unless something links that evidence to the actual events at issue, it has no capacity to resist summary judgment. See 585 F.2d at 951-52. Similarly, in Mau v. Chertoff, 549 F. Supp. 2d 1247, 1252 n.1 (S.D. Cal. 2008), the district court found that the Pelich argument in that case was a "red herring" raised by the Government, because the petitioner's previous refusal to fill in applications was not the *cause* of the lack of removal, the stay of removal was. Similarly here, no material evidence links the Sudanese nationality claim to ICE's failure to remove. Respondents lack any viable legal theory, and so summary judgment for Petitioner lies.[1] See Bushie, 460 F.2d at 118-19.

---

[1] Because Respondents point to no admissible evidence showing Mr. Sesay has impeded removal in any way, his case is entirely distinct from those cited in the Cross-Motion at 5. In Powell v. Ashcroft, 194 F. Supp. 2d 209 (E.D.N.Y. 2002), the detainee suggested several

1    Respondents have had every opportunity to produce the required evidence that Sierra Leone has refused

2  or delayed the issuance of documents *because of* the claim of Sudanese nationality, but they have failed to

3

4  do so. They have submitted no affidavit under Rule 56(f) that they were unable to secure the required

5  evidence. If Officer Thomas has anything to offer to show the basis for his statement, Respondents plainly

6  had the ability to obtain an affidavit to that effect. They did not do so. Like the <u>Adickes</u> defendants' failure

7  to present the evidence from the persons actually involved in the crucial events, Respondents' failure to

8

9  provide any evidence contradicting their own concession of non-refusal, or supporting their whole-cloth

10  assertion that Sierra Leone's dilatoriness results from a claim of Sudanese origin, reveals the utter lack of

11  factual foundation to their claims. As in <u>British Airways,</u> free-floating theories with no causal links and

12  speculative argument of counsel do not substitute for admissible evidence addressing the controlling issues

13  of the case.

14    As no admissible evidence in the record shows that Sierra Leone has refused or delayed issuance of

15

16  travel documents because of a claim of Sudanese nationality, the essential element for Respondents' <u>Pelich</u>

17  claim is lacking. Respondents' one viable defense theory presents no genuine issue on any material fact.[2]

18

---

19  different nationalities and statuses and ICE wasted time following up on all of them. To the

20  contrary here, ICE refused to follow up on the one alternate nationality Mr. Sesay claimed until, nearly a year later, they made contact with the Sudanese embassy. Nothing here shows ICE was

21  forced to spin it wheels by following false leads. In <u>Sango-Dema v. District Director</u>, 122 F. Supp. 2d 213 (D. Mass. 2000), a pre-<u>Zadvydas</u> case, the detainee claimed he lost his passport,

22  but then he refused to fill in an application for a new one or to talk to the embassy officials. Mr. Sesay never had a valid passport to surrender–he had a forgery he bought in Los Angeles to

23  obtain a work permit, but he has never refused to fill in forms or to speak to embassy officials, and ICE has never alleged otherwise. <u>Seretse-Khama v. Ashcroft</u>, 215 F. Supp. 2d 37 (D.D.C.

24  2002), actually supports Mr. Sesay's claims, because there the district court held that telling

25  truthful information to the embassy, even if it has a deterrent effect, is not deliberate obstruction permitting suspension of the removal period under § 1231(a)(1)(C).

26    [2] Respondents resuscitate their meritless unclean hands argument. Cross-Motion at 8-9.

27  For the reasons given in the Traverse at 12-13 and the Motion for Summary Judgment at 5 n.2, unless Respondents can link specific acts of misconduct to the claim at issue, the doctrine does

28  not apply. <u>See Jarrow Formulas. Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 841 (9th Cir. 2002). Thus, Respondents face the identical problem as with their <u>Pelich</u> argument, of which the

1   Mr. Sesay's Zadvydas claim is unrefuted. This Court should grant the Motion for Summary Judgment and

2   grant the Petition.[3]

3                                                   III

4

5   **RESPONDENTS FAIL TO REFUTE THE ARGUMENT THAT THEY HAVE**
    **PROCEDURALLY DEFAULTED ON THEIR SUSPENSION DEFENSE.**

6

7   Mr. Sesay argues that Respondents have defaulted on the suspension argument under § 1231(a)(1)(C),

8   because they failed to follow their own regulations for implementing the statute, which raises a due process

9   bar to using suspension as a defense to a Zadvydas claim. In Singh v. Gonzales, 448 F. Supp.2d 1214 (W.D.

10  Wash. 2006), the district court held that the Government was precluded from raising the statutory suspension

11  provisions to excuse a prolonged detention, because it had failed to fulfill the requirements of 8 C.F.R.

12  § 241.4(g) to serve the deportee within the removal period with notice of a failure to comply. Likewise, here,

13

14  ICE failed to comply with its own regulations requiring notice of non-cooperation prior to the end of the

15  removal period and identifying the precise deficiency and what the detainee must do to return to compliance.

16  See 8 C.F.R. § 241.4(g)(5)(ii). The notice here was served more than four months *after* the expiration of the

17  removal period and nine months after ICE was aware Mr. Sesay was not from Sierra Leone, but from the

18

19  _____

20  unclean hands argument is just a more nebulous variant. Contrary to Respondents' assertion, no
    evidence in the record shows the misconduct "relates to the very pivotal issue of this case,"

21  Cross-Motion at 8, because that "pivotal issue" is not whether Mr. Sesay "has lied about his
    citizenship" in the abstract, but whether anything he has said or done *during the removal period*

22  *has demonstrably impeded removal.* Not surprisingly, Respondents fail to address Mr. Sesay's
    citation to Arevalo v. Ashcroft, 344 F.3d 1 (1st Cir. 2003), where the First Circuit denied

23  application of unclean hands to acts that had no connection to the central issue of the case and
    then found no effect on the validity of the petitioner's Zadvydas claim. Arevalo shows that

24  misconduct unanchored to the issues in the case does not vitiate relief.

25

26      [3] Because the only material issue is the reason why travel documents have not issued,
    Respondents' detour into the expert's findings is premature and irrelevant. Cross-Motion at 5-7.

27  Besides the simple fact that none of their points address why Sierra Leone has not produced
    documents, Dr. Lobban's opinion is highly disputed, subject to foundational challenges, subject

28  to credibility weighing against Mr. Sesay's account and countering evidence, and inherently
    inappropriate as a basis for summary judgment. See 10B Wright et al., supra, § 2738.

                                                    9                          07CV2354-JM (LSP)

Sudan.  Moreover, the belatedly served notice failed to allege non-cooperation due to making a false claim of Sudanese nationality, but merely stated "you have failed to provide the Sierra Leone Consulate with the information necessary for the issuance of a travel document,"  Return Exhibits at 49, and is directly contradicted by the two prior custody reviews, which listed no acts of obstruction whatever.  See Return Exhibits at 44, 54.  Under Singh, the Government has forfeited its suspension defense.

Respondents attempt to counter this reasoning by arguing that: (1) Mr. Sesay's continued detention is justified by 8 U.S.C. § 1231(a)(6), and (2) Singh was wrongly decided by overlooking the effect of 8 C.F.R. § 241.4(g)(5)(iv).  Cross-Motion at 9.  The first argument is inconsistent with their Pelich claim, which is based on invocation of § 1231(a)(1)(C) to justify continued detention beyond the Zadvydas period and is, in any event, plainly contradicted by Zadvydas and Clark v. Martinez, 543 U.S. 371 (2005).  The second argument is equally meritless, since it ignores the plain language of the regulations at issue, which allow suspension *only* if the 90-day period has not yet elapsed.

Respondents originally claimed detention was authorized under the suspension provisions of § 1231(a)(1)(C); they now assert that continued detention is justified under 8 U.S.C. § 1231(a)(6), because ICE, in its standard, administrative custody reviews, found Mr. Sesay was a flight risk and danger to the community.  Cross-Motion at 9.  Respondents' argument either contradicts their previous reliance on Pelich and Lema or constitutes an abandonment of the suspension argument they proffered in their Return at 4-6.[4] Both Pelich and Lema expressly based their continued detention analysis on the authority to extend the *removal period* provided by § 1231(a)(1)(C) as an exception to Zadvydas.  See Pelich, 329 F.3d at 1059;

---

[4] Respondents state they raised this argument in their Return, and that Mr. Sesay failed to address it.  See id. ("The Government has already addressed [Mr.] Sesay's argument in its Return, and [Mr.] Sesay has not addressed the Government's argument in his instant motion.")  However, there is no mention of § 1231(a)(6) at all in the Return, but several references to § 1231(a)(1)(C) as justifying detention, consistent with their Pelich argument.  See Return at 1,4, 6, 7. Respondents apparently meant to cite their *Supplemental* Return, where this argument is made on pages 12-15.

Lema, 341 F.3d at 855-56. Indeed, both of those cases acknowledged that Zadvydas was interpreting § 1231(a)(6) precisely to avoid constitutional doubt about indefinite detention. See Pelich 329 F.3d at 1059-60; Lema, 341 F.3d at 856. Obviously, if § 1231(a)(6) provided authority to detain deportees beyond the 180-day Zadvydas period, with no further showing beyond that justifying detention past the 90-day removal period, the Ninth Circuit would never have had to turn to the suspension provisions of § 1231(a)(1)(C) to justify detention of Mr. Pelich and Mr. Lema. However, the Ninth Circuit realized–as apparently Respondents do not–that the Supreme Court in Zadvydas, as it also did later in Martinez, 543 U.S. at 377-80, held that § 1231(a)(6) cannot–consistent with the Due Process Clause–authorize detention beyond the period where there is a significant likelihood of removal in the reasonably foreseeable future. It is precisely because the Supreme Court found § 1231(a)(6) does not authorize indefinite detention that Respondents' new argument based on that statute utterly fails.[5]

The governing regulation, 8 C.F.R. § 241.4(g)(5)(ii), states that in order to suspend the removal period under § 1231(a)(1)(C), ICE "will provide [a non-cooperating] alien with a Notice of Failure to Comply, *before the expiration of the removal period.*" Respondents, however, claim that they are not required to adhere to the literal language of this regulation, because they were "not yet aware that [Mr.] Sesay's actions had or would cause a delay in the Sierra Leone consulate's issuance of a travel document." Cross-Motion at 9. Nothing in the regulations or in any cited case supports this gaping exception to the notice and opportunity requirements in the regulation. Inconsistently, Respondents argue–without evidence–that claiming Sudanese nationality is obviously causing delay in obtaining travel documents from Sierra Leone, but then insist that ICE officials could not have anticipated such an effect back in August 2007. Respondents cannot have it both ways. There is simply no basis to allow Respondents to pick and choose which of their

---

[5] Likewise, Respondents attempt to turn back the clock by citation to the pre-Zadvydas case, Balogun v. INS, 9 F.3d 347 (5th Cir. 1993), which dealt with procedures under detention statutes which are since superseded.

own regulations they will be subject to; nothing could be further from the basic requirements of due process of law.

> Here, however, the record indicates that ICE failed to adhere to its custody review procedures by making a decision regarding petitioner's custody status without notifying petitioner's counsel or reviewing documentation submitted by petitioner in support of his release. The Court finds that such review does not comport with due process, as it was not implemented in a procedurally fair manner. ICE cannot constitutionally continue to detain petitioner without complying with the procedures laid out in the regulations.

Doissaint v. Chertoff, No. C08-0584-MJP, 2008 WL 3978559, at *8 (W.D. Wash. Aug. 26, 2008).

As for the argument that Singh was wrongly decided, Respondents' points are misdirected and immaterial. First, Respondents claim that Singh failed to consider the effect of 8 C.F.R. § 241.4(g)(5)(iv), which they claim "contemplates invocation of Section 1231(a)(1)(C) after the 90-day removal period has ended." Cross-Motion at 9. No authority for this proposition is given. In fact, such an interpretation is contrary to the plain language in the subparagraph directly before this one, which reads, "The Service shall advise the alien that the Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, *if the removal period has not yet expired.*" 8 C.F.R. § 241.4(g)(5)(iii) (emphasis added). Reading all the portions of § 241.4(g) together, suspension applies *only* when the removal period has not already elapsed. The language in subparagraph (iv) cited by Respondents, that failure to serve notice during the removal period "shall not have the effect of excusing the alien's conduct," does not refer to suspension of a removal period which has already expired, but to the sanctions for failing to cooperate or impeding removal mentioned elsewhere in the same section. See 8 C.F.R. § 241.4(g)(5)(ii) (stating that in addition to suspension, non-cooperation subjects the deportee to criminal prosecution under 8 U.S.C. § 1253). It is these sanctions which apply to Respondents' hypothetical of the deportee who physically resists removal at the last minute. See Supplemental Return at 13.

The suspension provisions provide incentives not just for the alien to cooperate, but for ICE to act diligently, by setting strict time limits for ICE to act. As the Supreme Court case law on immigration

detention reflects, the severe effects of deprivation of personal liberty are constitutional only on the condition that authorities act expeditiously. See Demore v. Kim, 538 U.S. 510, 528-31 (2003) (mandatory detention pre-removal is constitutional in light of dispatch in processing removals); Casas-Castrillon v. DHS, 535 F.3d 942, 2008 WL 2902026, at *4 (9th Cir. 2008) (mandatory detention provisions apply only to expeditious removal proceedings). ICE is granted the drastic *power* of indefinite suspension and civil detention under § 1231(a)(1)(C) precisely because they have the corresponding *duty* to proceed diligently within fixed limits. Accordingly, when Respondents fail to follow their own regulatory framework, they forfeit the power to continue detention.

Next, Respondents distinguish Singh, because it did not consider the argument regarding § 1231(a)(6). Cross-Motion at 9. As shown above, that argument is vacuous and does not detract from the persuasiveness of Singh.

Finally, Respondents find fault with Singh's calculation of the amount of time by which the Government missed the deadline to serve the required notice of non-compliance. Cross-Motion at 10 n.8; see also Supplemental Return at 14 n.14. First, Respondents' argument is incorrect, because Mr. Singh was never granted a stay of removal and did not even informally request a stay until his petition for review was pending for well over a year; that request was not acted on. See Appendix (*full* docket sheets for Singh v. Gonzales, No. 03-72471 (9th Cir.)). Consequently, Judge Robart's calculation of the removal period as running unhampered for 90 days following the final removal order on May 29, 2003, was entirely correct under 8 U.S.C. § 1231(a)(1)(B)(i) (removal period runs from date of administratively final removal order). In any event, whether the Government missed the fixed deadline by 19 days or 17 months is entirely immaterial. No authority or logic supports Respondents' argument that ICE need only be in the ballpark in complying with mandatory time limits. Missing the required deadline by even one day suffices to work a default on the

13                                          07CV2354-JM (LSP)

Government.[6]

_____

   [6] Respondents' Cross-Motion is riddled with misstatements of fact so numerous that it is only possible to list them in order to deny them.  Accordingly, Mr. Sesay notes and denies the following erroneous and unsupported assertions: (1) Mr. Sesay never claimed to have entered the United States with an "uncle." (Cross Motion at 1). (2) Respondents engage is rank speculation that Mr. Sesay would not be admitted if he had flown from South Africa on a Sierra Leone passport. (Id.)  In any case, Mr. Sesay has never asserted he came on a direct flight from South Africa. (3) The assertion that Mr. Edwards was Mr. Sesay's "cousin" was to secure school enrollment and does not indicate actual kinship (Id. at 2).  See Affidavit of John K. Edwards ¶ 5. (4) Mr. Sesay did not "obtain a re-newed passport from the Government of Sierra Leone" (id.); the passport copy he submitted to immigration for a work permit was a forgery Mr. Sesay purchased in Los Angeles and then discarded.  See Reply to Supplemental Return at 6-7. (5) Mr. Sesay did not "flee" to Tennessee "to avoid arrest." Id.  See Reply to Supplemental Return at 5-6 (Respondents' own exhibits show California authorities did not view Mr. Sesay as a fugitive, his whereabouts were always know, and he voluntarily returned to the state to face charges). (6) Mr. Sesay "began using the name 'Mikey Jabbar'" after moving to Tennessee. Id. Mr. Sesay never officially used his true name prior to the removal proceedings, though he disclosed his name to others in private over the previous 20 years.  See Affidavit of John K. Edwards ¶ 3. (7) Mr. Sesay denies he ever reported to authorities he was a U.S. citizen or was born in the Virgin Islands. Id. at 2-3.  (8) The Sudan embassy did not definitively state Mr. Sesay is not a citizen of that country, but that he needed to supply documentary evidence. Id. at 4; see Traverse, Exhibit D. (9) Mr. Sesay could not place Toray on a map of Sudan, because no map, even the expert's, showed that village, even though it is known independently to exist. Id. at 6.  Nor is there any reasonable expectation that Mr. Sesay would know the precise geographic location of a place he left when he was eight years old. (10) Mr. Sesay denies he and Mariama Kamara "start[ed] a family together." Id. at 7.  No evidence shows the nature of this relationship and Mr. Sesay denies he has any knowledge that Sheck Almammy is his biological son.  In fact, the ICE investigation report proffered by Respondents, Exhibits at 116, shows a date of birth for Sheck–apparently a native-born citizen–in 1980, when Mr. Sesay was about 9 or 10 years old and six years before Mr. Sesay came to the United States. (11) Respondents mention the monthly service of I-229 notices, id. at 4, but fail to mention that those notices started only in December 2007, after the Petition was filed and ICE sought to shore up their new claim of non-cooperation. (12) Without prematurely debating the accuracy and value of the expert's findings, Mr. Sesay denies as a simple fact that Dr. Lobban's report finds no evidence supporting Sudanese origin, only that his opinion was that the evidence of Sudanese origin was insufficient, but reserving on the possibility that there may be other explanations for the deficiencies. Id. at 6.  (13) Mr. Sesay in any event objects to reliance on vague physical stereotypes as a highly discredited method of determining ethnic affiliation. Id. at 6.  (14) Respondents point to Article 31 of the Vienna Convention on Diplomatic Relations as immunizing diplomats from giving testimony, but fail to note that Article 32, ¶ 1of the Treaty indicates that immunity may be waived by the sending state. (15) Respondents represent, without supplying any documentary support, that "public information" shows the names of others who had lived, at some unspecified times, in the same apartment as John K. Edwards. Id. at 2 n.3.  Without authenticated documentation supporting this assertion, it is improper under Rule 56(e)(1) and should be ignored or stricken from the pleading.

# CONCLUSION

The evidence indicates–without any genuine issue of material fact–that Mr. Sesay has shown the essential elements of his <u>Zadvydas</u> claim: he has been excessively detained, Sierra Leone has delayed acceptance without any reasonable explanation, and nothing indicates a significant likelihood that it will act on the request in the reasonably foreseeable future. Respondents' defense of suspension under <u>Pelich</u> for non-cooperation lacks any material support, as all the admissible evidence indicates Sierra Leone has not refused travel documents for any reason, and no admissible evidence shows that any impediment has resulted from the claim of Sudanese nationality. In addition, Respondents' sole defense is legally barred by their own default in failing to serve adequate notice of non-compliance. The suspension defense is utterly groundless. Under <u>Celotex</u> and Rule 56(e)(2), Mr. Sesay is entitled to summary judgment in his favor.

Respondents' cross-motion, based on unanchored claims of misconduct which have no demonstrable, causal connection to the success or failure of removal efforts, fails to raise any genuine issue of material fact in support of their position. As in <u>Adickes</u>, summary judgment in their favor on a such a record would be improper. Respondents have adduced no competence evidence supporting any legal defense to the <u>Zadvydas</u> claim or to the procedural default under <u>Singh</u>. The Court should grant the motion and enter judgment in favor of Petitioner.

Respectfully submitted,

Dated: September 5, 2008

JAMES FIFE
Federal Defenders of San Diego, Inc.
Attorneys for Petitioner SESAY
james_fife@fd.org

15                07CV2354-JM (LSP)

# Appendix

## General Docket
### United States Court of Appeals for the Ninth Circuit

| | |
|---|---|
| **Court of Appeals Docket #:** 03-72471<br>Singh, et al v. Gonzales<br>**Appeal From:** Board of Immigration Appeals | **Docketed:** 07/01/2003<br>**Termed:** 08/16/2004 |

**Case Type Information:**
  1) agency
  2) review
  3) Seattle Western Washington

**Originating Court Information:**
  **District:** BIA-1 : A71-786-358
  **Date Filed:** 06/30/2003

**Prior Cases:**
  None

**Current Cases:**
  None

| | |
|---|---|
| CHARANJIT SINGH (-: A71-786-358)<br>Petitioner | Charanjit Singh<br>[NTC Pro Se]<br>NWDC - NORTHWEST DETENTION CENTER<br>1623 East "J" Street<br>Tacoma, WA 98421 |
| v. | |
| ALBERTO R. GONZALES, Attorney General<br>Respondent | Nelda C. Ackerman, Esquire<br>Direct: 202-616-4886<br>[COR LD NTC Government]<br>DOJ - U.S. DEPARTMENT OF JUSTICE<br>Civil Division/Office of Immigration Litigation<br>P.O. Box 878, Benjamin Franklin Station<br>Washington, DC 20044 |

Ronald E. LeFevre
Email: Opla9cir@dhs.gov
[LD NTC Government]
OFFICE OF THE DISTRICT COUNSEL
Department of Homeland Security
P.O. Box 26449
San Francisco, CA 94126-6449

OIL
Email: Ninth.Circuit.OIL@usdoj.gov
[COR LD NTC Government]
DOJ - U.S. DEPARTMENT OF JUSTICE
Civil Division/Office of Immigration
Litigation
P.O. Box 878, Benjamin Franklin Station
Washington, DC 20044

Terri Jane Scadron, Esquire
Direct: 202-514-3760
Email: Terri.J.Scadron@usdoj.gov
[COR LD NTC Government]
DOJ - U.S. DEPARTMENT OF JUSTICE
Civil Division/Office of Immigration
Litigation
P.O. Box 878, Benjamin Franklin Station
Washington, DC 20044

WWS-District Counsel, Esquire
[LD NTC Government]
IMMIGRATION AND
NATURALIZATION SERVICE
Office of the District Counsel
1000-2nd Ave., Suite 2900
Seattle, WA 98104

CHARANJIT SINGH,

         Petitioner

v.

ALBERTO R. GONZALES, Attorney General,

Respondent

| | | |
|---|---|---|
| 07/01/2003 | 1 | FILED AS OF 6/30/03 INS PETITION FOR REV DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL FOR RESPONDENT AND PETITIONER IN PRO SE, NOTIFIED RESPONDENTS OF FILING. setting schedule as follows: Certified Administrative Record due 12/29/03 petitioner's opening brief is due 2/6/04; respondents' brief is due 3/10/04; petitioner's optional reply brief is due 14 days from service of respondent's brief.(PRO SE) [03-72471] |
| 07/25/2003 | 6 | Received Petitioner Charanjit Singh's motion to proceed in forma pauperis; no srvc provided. [MOATT] [03-72471] |
| 07/25/2003 | 7 | Received Petitioner Charanjit Singh's motion for appt of csl no service provided. [MOATT] [03-72471] |
| 07/25/2003 | 8 | Received Petitioner Charanjit Singh's motion for permission to waive excerpts of record; no srvc provided. [MOATT] [03-72471] |
| 07/25/2003 | 9 | Received Petitioner Charanjit Singh's brief in 4 copies 10 pages (Informal: y) 0 excerpts of record; served 07/07/03. [mtns pending/MOATT] [03-72471] |
| 07/31/2003 | 3 | Filed order (Deputy Clerk: jlc) A review of the dkt reflects that petitioner has not pd the dkt fees for this petition. Within 21 days of the entry of this order, petitioner shall: (1) file a mtn with this ct to proceed ifp; (2) pay $100 dkt fees for this petition; or (3) otherwise show cause why the petition should not be dismissed for failure to prosecute. If petitioner fails to comply with this order, the petition will be dismissed automatically by the Clerk under 9th Cir.R. 42-1. [03-72471] |
| 08/08/2003 | 11 | Filed order MOATT (ID) The ct has rcvd petitioner's mtn to proceed ifp. Within 21 days of the date of this order, petitioner shall complete and file the enclosed financial affidavit. Failure to do so may result in the denial of the mtn. The br sch is held in abeyance pending further ct order. [03-72471] |
| 08/11/2003 | 13 | Filed Petitioner Charanjit Singh's response to order to show cause; served on 8/6/03. [MOATT] [03-72471] |
| 08/18/2003 | 14 | FILED 4 CERTIFIED COPIES OF ADMINISTRATIVE RECORD ON APPEAL IN (1) VOLUME. [03-72471] [03-72471] |
| 09/02/2003 | 17 | Filed order MOATT (ID) In light of possible confusion surrounding |

petitioner's mtn for ifp, petitioner has an additonal 14 days from the filed date of this order to complete and file the enclosed financial affidavit. Failure to do so may result in the denial of the mtn for ifp. The ct's July 31, 2003 order is vacated. The br sch shall remain in abeyance pending further ct order. [03-72471]

| | | |
|---|---|---|
| 10/06/2003 | 20 | Filed order MOATT (ID): The ct is informed that petitioner's address has changed. The Clerk shall enter on the dtk the correct address. Petitioner is reminded that any change of address must be reported to the ct immediately and in writing. (cite) It appears petitioner may not have rcvd this ct's orders of July 31, 2003 and Aug. 8, 2003. Within 21 days of the date of this order, petitioner shall complete and file the enclosed financial affidavit. Failure to do so may result in the denial of the ifp mtn. The br sch is held in abeyance pending further ct order. [03-72471] |
| 10/17/2003 | 22 | Filed Charanjit Singh's financial affidavit in response to ct order; no srvc provided. [MOATT] [03-72471] |
| 11/18/2003 | 23 | Filed order (Barry G. SILVERMAN, Richard C. TALLMAN): The mtn for leave to proceed ifp is granted; mtn for appt of csl denied, no mtn for recon, clarification, or modification of this denial shall be filed or entertained. Clerk shall file petitioner's opening br rcvd July 25, 2003. Answr br is due Dec. 22, 2003; optional reply br is due 14 days after srvc of the answr br. Petitioner is reminded that a change of address must be reported immediately in writing to the Clerk of the Ct. (cite) [03-72471] |
| 11/18/2003 | 25 | Filed original and 4 copies Petitioner Charanjit Singh opening brief (Informal: y) 10 pages and zero excerpts of record; served on 7/7/03. [03-72471] |
| 12/24/2003 | 29 | Filed motion & order :(Deputy Clerk: gss/PROMO) The resp's late motion for an ext of time to file the answering brief is granted. The answering brief is now due Feb. 11, 2004. The optional rely brief is due 14 days after service of the answering brief. ( Motion recvd 12/19/03) [03-72471] |
| 12/24/2003 | 30 | Rec'd notice of appearance of Nelda C. Reyan, Esq (Withdrew as counsel: attorney OIL for John Ashcroft [03-72471] |
| 01/23/2004 | 32 | Copy of letter dated 1/12/04 to Attorney Peter D. Keisler received from Charanjit Singh re: "I do not understand the optional reply brief . . . and how wer are to proceed from here."(NAN - PRO SE) [03-72471] |
| 01/30/2004 | 31 | Rcvd original and 8 copies Charanjit Singh's reply brief (Informal: |

|  |  |  |
|---|---|---|
|  |  | y ) of 5 pages; no service provided. [respondent's answr br has not been filed] [03-72471] |
| 02/17/2004 | 33 | Filed original and 15 copies respondent's 13 page brief, 0 excerpts of record; served on 2/11/04. [03-72471] |
| 02/19/2004 | 37 | Filed original and 8 copies Charanjit Singh reply brief (Informal: y) 5 pages; no service provided. [sent copy to respondent's csl of record] [03-72471] |
| 03/03/2004 | 41 | Calendar check performed [03-72471] |
| 04/22/2004 | 42 | Received Petitioner Charanjit Singh's addendum to supporting reply brief 'Optional Brief' Served 4/21/04. [RECORDS] [03-72471] |
| 06/08/2004 | 43 | Received letter from pro se re: asking the ct for mercy, dated 05/16/04. [STAFFAT] |
| 07/23/2004 | 44 | SUBMITTED TO SCREENING PANEL 379. ( Written) [03-72471] [03-72471] |
| 08/06/2004 | 46 | Received letter from pro se re: allow stay of removal; dated 8/2/04. [Panel] |
| 08/16/2004 | 50 | FILED MEMORANDUM: DENIED 10/7/04 ( Terminated on the Merits after Submission Without Oral Hearing; Other; Written, Unsigned, Unpublished. Otto R. SKOPIL, Jerome FARRIS, Edward LEAVY ) FILED AND ENTERED JUDGMENT. [03-72471] |
| 08/27/2004 | 51 | [5162493] Filed orig & 3 copies petr's Singh petition for rehearing, 5 pgs; no svc date. (Panel) (SERVED resp by clk) [03-72471] |
| 08/30/2004 | 53 | Filed Petitioner Charanjit Singh's motion - petition for rehearing appeal, optional reply br; dated 8/24/04. [Faxed to Panel, had been misdirected to STAFFAT] [03-72471] |
| 09/21/2004 | 56 | Filed order (Otto R. SKOPIL, Jerome FARRIS, Edward LEAVY): The petition for rehearing is DENIED. [03-72471] |
| 10/04/2004 | 58 | MANDATE ISSUED [03-72471] |
| 10/04/2004 | 60 | Rec'd notice of change of address from Charanjit Singh dated 9/29/04. [new address: Tacoma Detention Center, 1623 East J St., Tacoma, WA 98421] [03-72471] |
| 03/09/2005 | 61 | NO ORIGINAL RECORD |

## PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 09/05/2008 09:50:27 | | | |
| **PACER Login:** | us2256 | **Client Code:** | IS |
| **Description:** | Docket Report (filtered) | **Search Criteria:** | 03-72471 |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated:  September 5, 2008

Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA  92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
James_Fife@fd.org (email)