KAREN P. HEWITT
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California State Bar No. 094918
CAROLINE CLARK
Assistant U.S. Attorney
California State Bar No. 220000
RAVEN M. NORRIS
Assistant U.S. Attorney
California State Bar No. 232868
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7119 / 7491 / 7157
Facsimile:  (619) 557-5004

Attorneys for Respondents

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IDRISA SESAY,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>MICHAEL CHERTOFF, Secretary Homeland Security, et al.,<br><br>　　　　Respondents. | Case No. 07cv2354 JM (LSP)<br>[A77 062 688]<br><br>GOVERNMENT'S REPLY<br><br>TIME:  1:30pm<br>DATE:  September 19, 2008<br>CTRM:  16 |

I

REGARDING THE GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT

　　A.　　SESAY'S FAILURE TO RAISE A GENUINE ISSUE OF MATERIAL FACT

　　Regardless of who bears the burden of going forward with the evidence in this case, the Government has submitted overwhelming evidence that Sesay is not from Sudan, and in response, Sesay has failed to present any evidence that he is from Sudan. The Immigration Judge ("IJ") was not convinced [Ex. 35], the Sudanese consulate was not convinced [Exs. 104, 113, 122], the Sierra Leone consulate was not convinced [Exs. 44, 97], and the court-appointed expert was not convinced. [Exs. 121-30.] On this issue, Sesay has failed to raise a genuine issue of material fact.

1       Sesay argues in the alternative that, even if he has lied about being from Sudan, the Government has not adequately proven that his lie has caused the Sierra Leone consulate to balk at issuing travel documents for his repatriation. Sesay's causation argument is a red herring because, if he is not from Sudan, it necessarily follows that he is from another country which he refuses to acknowledge or disclose. Courts have consistently required nothing more from the Government than evidence of an alien's inconsistent statements or other acts constituting failure to cooperate with repatriation.[1] It is Sesay who bears the burden of proving that his removal is not significantly likely in the reasonably foreseeable future. To do that, he has to acknowledge the country of his citizenship and show that it refuses to accept him back. Sesay has not even satisfied the first step of truthfully identifying his country of citizenship. He has identified only Sudan, and it is clear that he is not from Sudan. If Sesay is not from Sierra Leone (as he now asserts, even under oath), then Sesay must be from a third country which he has yet to disclose. If Sesay is from Sierra Leone, then he needs to admit it and cooperate with attempts to repatriate him, so that the process can go forward unimpeded.

      At any rate, even though Sesay has not presented evidence that the Sierra Leone consulate refuses to issue a travel document, the Government has presented evidence that Sesay's failure to cooperate has actually caused delay in the issuance of his travel documents. [Ex. 57 ("the Sierra Leone consulate notified ICE [Immigration and Customs Enforcement] that a travel document would not be issued due to him claiming to be a Sudanese citizen").] Therefore, regardless of who bears the burden on the issue of Sesay's non-cooperation and the likelihood of his removal in the reasonably foreseeable future, Sesay has failed to raise a genuine issue of material fact.

///

---

[1] See, e.g., Seretse-Khama v. Ashcroft, 215 F. Supp. 2d 37, 51 (D.D.C. 2002) (an act of non-cooperation would include petitioner's denying his Liberian citizenship to the consulate or giving false or misleading information that impeded the issuance of travel documents); Powell v. Ashcroft, 194 F. Supp. 2d 209, 210-11 (E.D.N.Y. 2002) (alien who claimed in four affidavits that he was from U.S. Virgin Islands, Jamaica, Trinidad, and Canada, and provided false name and false date of entry, prevented his removal); Sango-Dema v. District Director, 122 F. Supp. 2d 213, 221 (D. Mass. 2000) (court upheld further detention of alien who refused to provide passport and birth certificate, and refused to communicate with embassy officials or complete application for documents).

### B. SESAY'S EVIDENTIARY OBJECTIONS

In his "Objections to Evidence" filed on September 5, 2008, Sesay objects to the admissibility of two of the four documents submitted by the Government to supplement the record in these habeas proceedings [Exs. 114-20], invoking the Federal Rules of Evidence through Fed. R. Civ. P. 56(e)(1). [9/5/08 Objections at 1.] The Court should entertain only Sesay's relevance objections because, in its January 30, 2008 scheduling order, this Court directed the Government to submit "all transcripts or other documents <u>relevant</u> to the determination of the issues presented in the Petition." [CR 8 (emphasis added).] The parties agreed to proceed with supplemental briefing pursuant to Fed. R. Civ. P. 56, but did not agree that Rule 56 would supersede the law governing habeas proceedings or the previous orders of this Court. The Federal Rules of Civil Procedure do not govern habeas proceedings, and this Court retains broad discretion over their application. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 166 n.15 (1982) ("The court does not have to rigidly apply rules which would be inconsistent or inequitable in the overall framework of habeas corpus") (quoting Advisory Committee's Note, Rule 11, 28 U.S.C. § 2254); <u>Brown v. Vasquez</u>, 952 F.2d 1164, 1169 (9th Cir. 1991) ("courts are not bound to systematically apply traditional rules governing civil proceedings when to do so would be inconsistent with the overriding purpose of the federal habeas corpus statute"); <u>Castillo v. Pratt</u>, 162 F. Supp.2d 575, 577 (N.D. Tex. 2001) (§ 2254 Rules to apply to petitions filed under Section 2241).

Sesay's transcript from California State University, Los Angeles [Exs. 117-20], is relevant to the time-line of his activities in the United States and his early, advanced English-speaking ability, which refute his improbable story that he was smuggled here from Sudan via South Africa and spent his first three years in the United States as a slave worker. If the Court entertains Sesay's authenticity objection, it should be overruled because the transcript is sufficiently authenticated. <u>See</u> Fed. R. Evid. 901(b)(4) and/or 902(7). [<u>See</u> Exs. 117 (signed declaration of custodian of record); 118-20 (watermarks, seals, and signatures on transcript itself).] Regardless, the Government has already presented evidence to show that Sesay attended college from 1992 to 1996 at Los Angeles City College and California State University, Los Angeles [Exs. 22, 71-74, 79], and Sesay has never denied the allegation or challenged the evidence.

The investigative report [Exs. 114-16] is relevant because it contains information that the mother of Sesay's child is from Sierra Leone, showing that Sesay's primary acquaintances during at least his first ten years in the United States were from Sierra Leone and not from Sudan. From 1986 until at least 1989, Sesay lived in the same apartment complex (the Belford Towers) with Mr. Jonathan Edwards of Sierra Leone who has identified himself as Sesay's "guardian" and whom Sesay has identified as his "uncle" and his "cousin."[2] [Exs. 66-68, 89.] Then, from 1991 to 1996, Sesay lived with Ms. Mariama Kamara of Sierra Leone, and they had a child together. The Government has already presented evidence that Ms. Kamara is the mother of Sesay's child, Sheck Almammy Sesay. [Exs. 22, 75.][3] If the Court entertains Sesay's other objections to the investigative report, they should be rejected, because the record is admissible under Fed. R. Evid. 803(6), 901(b)(1), and/or 902(11). [See Declarations of Special Agent Cassandra Bullard and Samuel W. Bettwy.] In case the Court entertains and sustains Sesay's objection to the investigative report, the Government further supplements the record with the accompanying printout from DHS's database, showing that Kamara is from Sierra Leone. [Exs. 132-36; Declaration of Samuel W. Bettwy.]

///

///

///

---

[2] In the 9/8/08 Response [at 14 n. 6], Sesay's attorney states that Sesay identified Edwards as his cousin "to secure school enrollment." However, Sesay first identified Edwards as his cousin to DHS on July 30, 2007 [Ex. 89], whereas Sesay attended high school from 1986 to 1989 and college from 1992 to 1996. [Exs. 22, 65-68, 72-74, 79, 117-20.]

[3] In the 9/8/08 Response [at 14 n. 6], Sesay's attorney also states that Sesay "denies he has any knowledge that Sheck Almammy is his biological son," yet Sesay told California state law enforcement in 2004 that his relationship with Kamara "produced one child named Sheck who is 11 years of age." [Ex. 22 (which means that Sheck was born in 1991 or 1992).] See also 1998 notice of hearing in juvenile court which identifies Sesay as "caregiver" of "Almanya Sesay," born August 1, 1991. [Ex. 75 (emphasis added).]

II

<u>SESAY'S MOTION FOR SUMMARY JUDGMENT</u>

Regarding his own motion for summary judgment, Sesay appears to concede that, after the ninety-day removal period, the Government properly invoked detention authority for an additional ninety days under 8 U.S.C. § 1231(a)(6) (dangerousness/flight risk).[4/] However, Sesay argues that, after the presumptively reasonable six-month period of detention (namely after the 90-day removal period plus the 90-day extension under Section 1231(a)(6)), DHS has no authority to detain an alien on the basis of the alien's lack of cooperation unless DHS invoked such authority during the 90-day removal period under 8 C.F.R. § 241.4(g)(5)(iii). The statute contains no such restriction,[5/] and 8 C.F.R. § 241.4(g)(5)(iv) specifically provides that the alien's failure to cooperate shall not be excused by the fact that DHS serves the Notice of Failure to Comply after the 90-day removal period. Sesay's only response is that Section 241.4(g)(5)(iv) does not mean what it says. [9/8/08 Response at 12:19-23.] Sesay has not and cannot cite any statutory or case law in support of his argument. <u>See</u> <u>Balogun v. I.N.S.</u>, 9 F.3d 347, 350-51 (5th Cir. 1993) ("No court that has considered the issue has held that the INS must release a deportable alien from detention if the alien engages in conduct which prolongs his detention beyond the six-month period").

///

///

///

---

[4/]    In the 9/8/08 Response [at 10], Sesay's attorney incorrectly characterizes the Government's argument. The Government invoked authority under 8 U.S.C. § 1232(a)(6) to detain Sesay from the end of the 90-day removal period up until the end of the presumptively reasonable six-month period defined by the Supreme Court in <u>Zadvydas</u>. Since then, the Government has been detaining Sesay due to his lack of cooperation, not due to the danger and/or flight risk that he poses.

[5/]    <u>See</u> 8 U.S.C. § 1231(a)(1)(C).

III

CONCLUSION

For the reasons set forth above, the Petition should be denied. If the Court decides that there are remaining factual issues to explore in this case, the Government would recommend an evidentiary hearing at which relevant testimony may be presented, either live, by video conference, or by videotaped deposition.

DATED: September 11, 2008              Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ *Samuel W. Bettwy*

SAMUEL W. BETTWY
Assistant U.S. Attorney

CAROLINE CLARK
Assistant U.S. Attorney

RAVEN M. NORRIS
Assistant U.S. Attorney

Attorneys for Respondents